John FLETCHER and Susan
Fletcher, Appellants,

v.

SOUTH PENINSULA HOSPITAL,
Appellee.

No. S–10484.

Supreme Court of Alaska.

. June 13, 2003.

Rehearing Denied July 10, 2003.

---

**87.** *See supra* Part IV.C.2.b at 37–40.

**88.** *See supra* Part IV.C.2.c at 40.

**89.** *Id.*

Rex Lamont Butler and David E. George, Rex Lamont Butler & Associates, Anchorage, for Appellants.

Howard A. Lazar, Delaney, Wiles, Hayes, Gerety, Ellis & Young, Inc., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

# I. INTRODUCTION

John and Susan Fletcher appeal to this court on three theories under which they argue South Peninsula Hospital should be held liable for the alleged negligence of an independent contractor surgeon who has staff privileges at the hospital. First, the Fletchers assert that the trial court erred in refusing to extend to the operating room the "non-delegable duty" vicarious liability that we applied to hospitals in *Jackson v. Power*[1] with respect to emergency room negligence. Second, the Fletchers argue that the trial court erred in granting South Peninsula summary judgment on the issue of the hospital's vicarious liability under the theory of apparent authority. Third, the Fletchers contend that the trial court erred in granting South Peninsula summary judgment on the issue of the hospital's direct liability under the theory of corporate negligence for its allegedly negligent renewal of staff privileges for the independent contractor surgeon. The Fletchers also argue that the trial court erred in denying their motion to relax the expert disclosure rules of Alaska Civil Rule 26(a)(2)(B). We affirm the trial court's rulings on non-delegable duty and apparent authority, but we reverse the rulings on corporate negligence and relaxation of expert disclosure rules.

# II. FACTS AND PROCEEDINGS

## A. Factual History

In January 1997 John Fletcher went to the office of Dr. Paul Eneboe, a Homer general practitioner, complaining of severe abdominal pain. This was the first time Fletcher had ever seen Dr. Eneboe. Dr. Eneboe made arrangements for Fletcher to see Dr. Rene Alvarez, a surgeon, at South Peninsula Hospital later that same day. Dr. Alvarez ultimately performed surgical procedures on Fletcher on four different occasions in February and March, after which Dr. Alvarez was still uncertain as to the cause of Fletcher's pain. Prior to each procedure, Fletcher was given a "consent for medical treatment" form that included language indicating that the physicians at South Peninsula were independent contractors and not employees or agents of the hospital. Fletcher's condition persisted and worsened, so he saw Dr. Paul Sayer, another surgeon, at the end of March. Dr. Sayer successfully operated on and treated Fletcher for diverticulitis.

## B. Procedural History

The Fletchers filed a complaint against Dr. Alvarez and South Peninsula Hospital claiming that Dr. Alvarez negligently diagnosed and treated Fletcher and that South Peninsula negligently hired and granted hospital privileges to Dr. Alvarez and failed to investigate his competence as a surgeon.

South Peninsula moved for partial summary judgment, arguing that Dr. Alvarez was not an employee of the hospital, that the hospital could not be held liable under a theory of apparent agency, and that the

---

1. 743 P.2d 1376 (Alaska 1987).

Fletchers could not establish a prima facie case of negligent credentialing. The Fletchers filed an opposition to South Peninsula's motion as well as a cross-motion for partial summary judgment on the theory that the hospital had a non-delegable duty to provide competent surgeons. The Fletchers also filed a motion to relax the expert disclosure rules to allow Dr. Sayer to testify as an expert despite not complying with the requirements of Alaska Rule of Civil Procedure 26(a)(2).

The trial court denied the Fletchers' cross-motion for partial summary judgment, ruling that the Fletchers were not entitled to summary judgment as a matter of law on the non-delegable duty issue. The trial court also denied the Fletchers' motion to relax the expert disclosure rules. The trial court granted South Peninsula's motions for partial summary judgment on the issues of apparent agency and negligent credentialing. The Fletchers and Dr. Alvarez reached a settlement regarding the claims against him. The trial court then entered final judgment in favor of South Peninsula.

The Fletchers appeal the denial of their cross-motion for partial summary judgment on the issue of the hospital's non-delegable duty. They also appeal the granting of South Peninsula's motions for partial summary judgment on the issues of apparent agency and negligent credentialing. In addition, the Fletchers appeal the denial of their motion to relax the expert disclosure requirements.

## III. DISCUSSION

### A. The Non–Delegable Duty for Negligence in the Emergency Room Need Not Be Extended to the Operating Room in this Case.

The Fletchers argue that the trial court erred in refusing to determine as a matter of law that the rule laid down in *Jackson v. Power*,[2] which establishes vicarious hospital liability for independent contractor emergency room doctors under a theory of non-delegable duty, should be extended beyond the emergency room to the operating room. Whether a legal duty should be extended is a question of law. We are not bound by the trial court's decision, but rather conduct de novo review, "adopt[ing] the rule of law that is most persuasive in light of precedent, reason, and policy."[3]

### 1. The *Jackson* decision

In *Jackson,* we held that Fairbanks Memorial Hospital (FMH) had a non-delegable duty to provide non-negligent physician care in its emergency room.[4] We concluded that the law imposed a duty on FMH to provide emergency care physicians on a twenty-four-hour basis.[5] FMH voluntarily assumed a broader duty by seeking accreditation by the Joint Committee on the Accreditation of Hospitals, whose standards mandated certain policies and procedures for FMH's emergency room.[6] FMH's bylaws also provided for maintenance and supervision of an emergency room.[7] Based upon these factors, we concluded that "it cannot seriously be questioned that FMH had a duty to provide emergency room services and that part of that duty was to provide physician care in its emergency room."[8]

We then decided that "having assumed the duty to staff an emergency room, FMH should [not] be allowed to avoid responsibility for the care rendered therein by claiming that the physicians it provides are not its employees."[9] We suggested that the criterion for determining which duties are non-delegable is that "the responsibility is so

2. 743 P.2d 1376, 1384–85 (Alaska 1987), *overruled in part by* AS 09.65.096 (for those hospitals that comply with its disclosure and insurance requirements), *as noted in Evans ex rel. Kutch v. State,* 56 P.3d 1046, 1066–67 (Alaska 2002).

3. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. 743 P.2d at 1377.

5. *Id.* at 1382.

6. *Id.* at 1382–83.

7. *Id.* at 1383.

8. *Id.*

9. *Id.*

important to the community that the employer should not be permitted to transfer it to another."[10] Non-delegable duties include

> the duty of a carrier to transport its passengers in safety, of a railroad to fence its tracks properly or to maintain safe crossings, and of a municipality to keep its streets in repair; the duty to afford lateral support to adjoining land, to refrain from obstructing or endangering the public highway, to keep premises reasonably safe for business visitors, to provide employees with a safe place to work; the duty of a landlord to maintain common passageways, to make repairs according to covenant, or to use proper care in making them, and no doubt others.[11]

We concluded that "patients ... receiving treatment at a hospital emergency room are as deserving of protection as ... airline passengers," deemed a hospital's duty to provide emergency room physicians to be as important to the community as a common-carrier's duty for the safety of its passengers, and noted parallels between the regulatory schemes of airlines and hospitals.[12]

We determined that "the hospital regulatory scheme and the purpose underlying it (to 'provide for the development, establishment, and enforcement of standards for the care and treatment of hospital patients that promote safe and adequate treatment' AS 18.20.010)," coupled with "the statutory definition of a hospital, (an institution devoted primarily to providing diagnosis, treatment or care to individuals, AS 18.20.130(3))," made clear the legislature's recognition that "it is the hospital as an institution which bears ultimate responsibility for complying with the mandates of the law."[13] Because the hospital had to ensure compliance with the regulations, it was the hospital that had to bear "final accountability for the provision of physicians for emergency room care."[14] Therefore, we held that "a hospital such as FMH may not shield itself from liability by claiming that it is not responsible for the results of negligently performed health care when the law imposes a duty on the hospital to provide that health care."[15] We observed that there was no reason that liability should be based on technical employment status; regardless of how the hospital provides emergency room physicians, it "will be responsible for the care rendered by physicians it has a duty to provide."[16]

Finally, we emphasized the limited nature of our holding. We did not extend our holding "to situations where the patient is treated by his or her own doctor in an emergency room provided for the convenience of the doctor. Such situations are beyond the scope of the duty assumed by an acute care hospital."[17] Rather, we limited our holding of vicarious hospital liability "to those situations where a patient comes to the hospital, as an institution, seeking emergency room services and is treated by a physician provided by the hospital."[18]

### 2. Extension of *Jackson* is unwarranted and unnecessary in this case.

■ While Alaska regulations require general acute care hospitals to provide surgical services in addition to emergency services,[19]

---

10. *Id.* at 1384 (emphasis removed) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 71, at 512 (5th ed.1984)).

11. *Id.* at 1383–84 (quoting *Prosser and Keeton,* § 71 at 511–12); *see also Alaska Airlines, Inc. v. Sweat,* 568 P.2d 916, 925–26 (Alaska 1977) (noting responsibility of common carrier for safety of its passengers).

12. *Jackson,* 743 P.2d at 1384.

13. *Id.*

14. *Id.* at 1384–85.

15. *Id.* at 1385.

16. *Id.*

17. *Id.*

18. *Id.*

19. *See* 7 AAC 12.105(a) ("A general acute care hospital must provide surgical, anesthesia, perinatal, medical, nursing, pharmaceutical, dietetic, laundry, medical records, radiological, laboratory, and emergency care services. A general acute care hospital must also provide speech, occupational, or physical therapy services."); *see also* AS 18.20.130(3) ("'hospital' means an institution or establishment, public or private, devoted primarily to providing diagnosis, treatment, or care ... for ... individuals suffering from

and while patients in operating rooms are as deserving of protection as *Jackson's* emergency room patients, extension of the non-delegable duty to the operating room is not warranted in this case. The Fletchers' situation does not fit within the narrow confines of our decision in *Jackson*. This is not a case of South Peninsula Hospital providing a physician to a patient who has come to the hospital for help. Fletcher went to South Peninsula to see Dr. Alvarez, to whom he was specifically referred. The non-delegable duty exception carved out in *Jackson* is limited to cases in which the patient looks to the hospital for care and the hospital selects the physician for the patient.[20] In *Ward v. Lutheran Hospitals & Homes,*[21] the only other case in which we addressed the application to hospitals of the theory of non-delegable duty, we concluded that the duty was inapplicable because Ward was treated at FMH's emergency room by her personal obstetrician, who was not a hospital employee. We repeated the *Jackson* holding that a hospital "is always liable for a physician's negligence in the emergency room, unless the physician is an independent contractor selected by the patient."[22] Although Fletcher did not have a prior relationship with Dr. Alvarez, Fletcher went to see a specific physician and was

looking to Dr. Alvarez for care, not to South Peninsula as an institution. Accordingly, extension of the theory of non-delegable duty in this case would be inappropriate.

The Fletchers cite several cases in their briefs to show that other courts have extended the non-delegable duty outside the emergency room, but decisions from other jurisdictions do not support extension in this case. Some of the cases cited by the Fletchers do not deal with the issue of non-delegable duty at all.[23] Others do employ the language of "non-delegable duty" outside the emergency room context, but these cases are distinct from the present inquiry because they deal with direct liability for the hospital, not vicarious liability.[24] Those jurisdictions that have addressed the issue of extending a vicarious liability non-delegable duty outside the emergency room have either rejected such an application[25] or have taken the *Jackson* approach of limiting the non-delegable duty to situations in which a patient seeks services at the hospital as an institution and is treated by a physician that the patient did not select.[26] Again, in this case, Fletcher was referred to a specific physician and was looking to Dr. Alvarez for care, not to South Peninsula as an institution.

---

illness, physical or mental disease, injury or deformity, or any other condition for which medical or surgical services would be appropriate").

**20.** *Jackson,* 743 P.2d at 1385.

**21.** 963 P.2d 1031, 1035 (Alaska 1998).

**22.** *Id.*

**23.** *See, e.g., Robert v. Paschall,* 767 So.2d 1227 (Fla.Dist.App.2000) (dealing with statutory duty); *Campbell v. Pitt County Mem'l Hosp.,* 84 N.C.App. 314, 352 S.E.2d 902, 907 (1987), *aff'd,* 321 N.C. 260, 362 S.E.2d 273 (1987) (finding, under corporate negligence theory, duty to ensure informed consent); *Felice v. St. Agnes Hosp.,* 65 A.D.2d 388, 411 N.Y.S.2d 901, 907 (N.Y.App. Div.1978) (concluding that question of fact exists as to relationship of doctors to hospital).

**24.** *See, e.g., Whittington v. Episcopal Hosp.,* 768 A.2d 1144, 1149 (Pa.Super.2001); *Pedroza v. Bryant,* 101 Wash.2d 226, 677 P.2d 166, 170 (1984) (en banc); *Johnson v. Misericordia Cmty. Hosp.,* 97 Wis.2d 521, 294 N.W.2d 501, 506 (Wis.App.1980), *aff'd,* 99 Wis.2d 708, 301 N.W.2d 156 (1981). This direct liability is usual-

ly found under the theory of corporate negligence, and as such, these cases will be addressed later in this opinion.

**25.** *Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 553 N.E.2d 1038, 1047–48 (1990), *overruled with respect to agency by estoppel by Clark v. Southview Hosp. & Family Health Ctr.,* 68 Ohio St.3d 435, 628 N.E.2d 46 (1994).

**26.** *Simmons v. Tuomey,* 341 S.C. 32, 533 S.E.2d 312, 322 (2000); *Martell v. St. Charles Hosp.,* 137 Misc.2d 980, 523 N.Y.S.2d 342, 350–52 (N.Y.Sup.Ct.1987); *Irving v. Doctors Hosp. of Lake Worth, Inc.,* 415 So.2d 55, 60–61 (Fla.Dist. App.1982). We need not decide at this time whether we would extend a non-delegable duty outside the emergency room in cases in which the hospital selects the physician, since that is not the case here. *Cf. Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 257 (Ky.1985) (applying principle of ostensible agency "to anesthesiologists, ... pathologists, radiologists, and emergency room physicians, all of whom share the common characteristic of being supplied through the hospital rather than being selected by the patient").

Finally, the availability of other remedies makes extension of the non-delegable duty unnecessary in this case. We noted in *Ward* that the theories of non-delegable duty and apparent agency create liability in the emergency room under the same circumstances.[27] As South Peninsula points out, this "demonstrates why such an extension is neither necessary nor justified." The two doctrines will cover the same circumstances in the emergency room; outside the emergency room, theories of apparent agency or apparent authority are still available. Therefore, although we decline to extend the theory of non-delegable duty under circumstances such as those in this case, future plaintiffs will not be left without legal remedy.[28]

## B. The Trial Court Did Not Err in Granting South Peninsula's Summary Judgment Motion on the Issue of Apparent Agency.

The Fletchers next argue that the trial court erred in granting South Peninsula's motion for partial summary judgment on the issue of apparent agency, their second asserted basis for vicarious hospital liability. We review de novo a grant of summary judgment. We must "determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts."[29] All reasonable inferences of fact must be drawn in favor of the non-moving party.[30]

*Jackson v. Power* again provides the cornerstone for this analysis. In that decision, we discussed the significantly overlapping doctrines of apparent agency and apparent authority. We noted that "apparent agency" (sometimes called "ostensible agency") is based on the Restatement (Second) of Torts, which provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.[31]

We determined that the two relevant factors in apparent agency are "(1) whether the patient looks to the institution, rather than the individual physician, for care; and (2) whether the hospital 'holds out' the physician as its employee."[32] We declined to apply apparent agency to the hospital-physician context, though, concluding that the "traditional rules of apparent authority provide sufficient guidelines."[33]

Apparent authority is based on Section 8 of the Restatement (Second) of Agency. We explained in *Jackson* that apparent authority is created by "written or spoken word or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him."[34] We emphasized that it is the principal's conduct that is relevant. "[O]ne dealing with an

---

27. *Ward v. Lutheran Hosps. & Homes*, 963 P.2d 1031, 1034–35 (Alaska 1998).

28. The Fletchers argue that AS 09.65.096 (enacted after Fletcher's injury) supports their arguments for extending the non-delegable duty, since it represents codification of the legislature's view of what reasonable notice and insurance requirements should be. This does not seem relevant to the evaluation of whether a non-delegable duty exists. The alternative relief they request should we not extend *Jackson* is that we rule that hospitals have a non-delegable duty to ensure that their independent contractor physicians carry adequate insurance, again based on AS 09.65.096. Again, that statute does not seem relevant to this case.

29. *Snook v. Bowers*, 12 P.3d 771, 776 (Alaska 2000).

30. *Id.; Meyer v. State*, 994 P.2d 365, 367 (Alaska 1999).

31. 743 P.2d 1376, 1380 (Alaska 1987) (quoting Restatement (Second) of Torts § 429 (1965)).

32. *Id.* (citations omitted).

33. *Id.* at 1380–81.

34. *Id.* at 1381 (quoting *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1130 (Alaska 1983) (quoting Restatement (Second) of Agency § 27 (1958))).

alleged agent must prove that the principal was responsible for the appearance of authority, by doing something or permitting the alleged agent to do something that led others, including the plaintiff, to believe that the agent had the authority he purported to have." [35] Except for apparent authority's more explicit focus on the principal's conduct, apparent authority and apparent agency are not markedly different theories of liability; in fact, other courts often use them interchangeably.[36] Both theories focus on the hospital's actions and on the reasonable beliefs of the patient.

█ South Peninsula sought to dispel any appearance of employment, agency, or authority. It is undisputed that prior to each of the four procedures Dr. Alvarez performed, Fletcher signed the hospital's Permission for Treatment and Billing form. Contained in this form was a "General Information" paragraph, which read:

> My Understanding Of The Relationship Between The Hospital and Physician Treating Me: I recognize that all physicians and dentists who may be treating me are independent, licensed practitioners who have been granted the privilege of using the hospital for the care and treat-

ment of their patients, and are not employees or agents of the hospital.

Fletcher claimed that he did not carefully read this paragraph since he signed many papers, was under a lot of medication, and was in extreme pain. Whether the patient understood the hospital's notice is not in itself a determining factor, however. The focus of the inquiry is on the hospital's actions, and provision of this form seems to be an action taken by South Peninsula to dispel an appearance of agency.[37]

The other factors to which the Fletchers point are insufficient to defeat summary judgment in this case. First, they direct this court to two other consent forms, each of which has a "South Peninsula Hospital" heading. Neither of these forms, however, contains any information about the relationship between the hospital and Dr. Alvarez. This absence cannot be read to suggest that South Peninsula held Dr. Alvarez out as its employee or agent, particularly given the hospital's express disclosure of its physicians' independent contractor status.[38] Further, the Fletchers never averred that these forms caused them "to believe that [South Peninsula] consent[ed] to have the act done on [its] behalf[.]" [39]

---

**35.** *Id.* (quoting *City of Delta Junction,* 670 P.2d at 1130) (internal citation omitted).

**36.** *See, e.g., Bynum v. Magno,* 125 F.Supp.2d 1249, 1265 (and cited cases) (D.Haw.2000).

**37.** *Cf. Valdez v. Pasadena Healthcare Mgmt., Inc.,* 975 S.W.2d 43, 46, 47 n. 2 (Tex.App.1998) (ruling that similar clause in consent form, signed without being read or understood, was sufficient to defeat ostensible agency claim because notice showed that hospital had not held out doctor as its agent); *Floyd v. Humana of Virginia, Inc.,* 787 S.W.2d 267, 270 (Ky.App.1989) (finding "testimony of the appellant admitting that she had read and signed each of the admission forms to Humana ..., which indicates her knowledge that the doctors were independent contractors and not agents of the hospital, to be determinative in this [ostensible agency] case."). *But cf. Valdez,* 975 S.W.2d at 48 n. 3 (recognizing that other Texas appellate courts had found circumstances surrounding patient's signing of consent forms in emergency room context to raise sufficient question of fact).

**38.** *See Valdez,* 975 S.W.2d at 46–47. Other cases that have considered forms with the hospital's name to be a significant factor have involved

forms that either did not disclaim or actively promoted a concept of agency with its doctors. *See, e.g., Bynum v. Magno,* 125 F.Supp.2d 1249, 1266 (D.Haw.2000) ("[I]t is at least arguable that QMC held itself out as the 'employer' of the doctors, i.e., it took the required affirmative step, by its forms which bore its name and which do not appear to have disclaimed affiliation with the doctors."); *Fulton v. Quinn,* 1993 WL 19674, at *6 n. 5 (Del.Super.Ct.1993) (unpublished opinion) (noting that all forms contained hospital logo and that language of forms "tends to indicate, or at least convey the impression, that the patient is the Hospital's patient, not a patient of [the doctor]").

**39.** *Jackson v. Power,* 743 P.2d 1376, 1381 (Alaska 1987). We also stated in *Jackson* that no showing of plaintiff reliance on the principal's conduct was needed for a showing of apparent authority "absent evidence that the patient knew or should have known that the treating physician was not a hospital employee when the treatment was rendered." *Id.* at 1382 n. 10. Given South Peninsula's disclaimer, the Fletchers' reliance becomes an issue.

■ The Fletchers also point to the fact that Dr. Alvarez had the hospital's phone number on his business cards and that South Peninsula was the only place Fletcher ever saw Dr. Alvarez.[40] These two facts suggest nothing more than an affiliation. Furthermore, South Peninsula allows physicians to use its number on their business cards because no paging service exists in Homer, so this is generally the only way for patients to reach their physicians during off-hours. This is an important service given the exigencies of life in rural Alaska, as is allowing doctors to see their patients at the hospital. In the context of this case—given the importance of these patient services, and because it is undisputed that Fletcher went to see a specific doctor for care and that South Peninsula repeatedly provided Fletcher with a disclaimer of a relationship with Dr. Alvarez—the factors to which the Fletchers point are insufficient to defeat summary judgment as a matter of law.

### C. The Trial Court Erred in Granting South Peninsula's Summary Judgment Motion on the Issue of Negligent Credentialing (Corporate Negligence).

The Fletchers argue that South Peninsula should be held directly liable under the theory of corporate negligence for its negligent credentialing of Dr. Alvarez, and that the trial court erred in granting the hospital's motion for partial summary judgment on the issue. We review de novo a grant of summary judgment.[41] We must determine whether any genuine issue of material fact exists and whether the moving party is enti-tled to judgment on the law applicable to the established facts. All reasonable inferences of fact must be drawn in favor of the non-moving party.[42]

■ As described in dicta in *Jackson*, "[t]he doctrine of corporate negligence holds that a hospital owes an independent duty to its patients to use reasonable care to insure that physicians granted hospital privileges are competent, and to supervise the medical treatment provided by members of its medical staff."[43] A prima facie case of corporate negligence requires plaintiffs to present evidence that (1) the defendant acted in deviation from the standard of care, (2) the defendant had actual or constructive notice of the defects or procedures that created the harm, and (3) the conduct was a substantial factor in bringing about the harm.[44]

■ Although the Fletchers would thus bear the burden of proof at trial, that is not the case at the summary judgment stage. "As a general proposition, a defendant is not entitled to complete summary judgment in Alaska unless it demonstrates as to each claim against it that there is no genuine issue of material fact *and that it is entitled to judgment as a matter of law*."[45] This is so even if the summary judgment motion concerns an element or issue on which the plaintiff would bear the burden of proof at trial.[46] The burden was thus on South Peninsula to show that it was entitled to summary judgment as a matter of law because it did not deviate from the standard of care, it did not have actual or constructive notice, and its conduct was not a substantial factor in caus-

---

**40.** The Fletchers also point to the fact that Dr. Alvarez was an employee of South Peninsula for one year, in 1992. The Fletchers note that the trial court struck this evidence but presume that it would have come out during Dr. Alvarez's testimony. This argument must fail. As South Peninsula correctly notes, the Fletchers do not argue that the trial court erred in striking the evidence and have no basis for assuming it would be allowed at trial. Even if allowed, Fletcher stated in his deposition that he knew nothing about Alvarez before first meeting him, so this fact could not have been an act of the principal engendering a reasonable belief in Fletcher of an agency or employment relationship.

**41.** *Snook v. Bowers*, 12 P.3d 771, 776 (Alaska 2000) (citation omitted).

**42.** *Id.; Meyer v. State*, 994 P.2d 365, 367 (Alaska 1999).

**43.** 743 P.2d at 1378 n. 2 (citations omitted).

**44.** *Whittington v. Episcopal Hosp.*, 768 A.2d 1144, 1149 (Pa.Super.2001).

**45.** *Ball v. Birch, Horton, Bittner & Cherot*, 58 P.3d 481, 485–86 (Alaska 2002) (emphasis added) (citations omitted).

**46.** *Id.* at 486.

ing Fletcher's harm.[47] We conclude that it did not carry that burden and that the trial court should therefore have denied summary judgment.

The focus of the Fletchers' negligent credentialing claim is South Peninsula's renewal of Dr. Alvarez's hospital privileges in 1996, the last renewal before Fletcher's surgeries. Dr. Alvarez filled out a "reappointment questionnaire" at that time. Dr. Alvarez's answers on this questionnaire indicated that his privileges had been suspended for medical record delinquency in Kodiak, that a case against him had settled in 1996, that professional liability claims against him had been dropped, that his malpractice insurance was terminated in 1990 because of the Kodiak incident, and that he never reapplied for malpractice insurance.[48] In addition, the Fletchers informed the trial court of six prior malpractice cases against Dr. Alvarez.

The trial court concluded that the reappointment questionnaire would probably be admissible evidence, as would the disciplinary proceeding in Kodiak for failing to fill out a medical record. The court was unsure whether the malpractice cases would be admissible or not. In *Ward*, we declared that a corporate negligence claim "requires proof that the hospital should have known that the physician would act negligently before the negligence at issue occurred."[49] Although the trial court deemed it "a close question," the court granted summary judgment in favor of South Peninsula, reasoning that this evidence did not "establish the proposition that the hospital should have known that [Dr.] Alvarez would act negligently in the

future[.]" The burden at the summary judgment stage, however, was on the hospital to show that it should not have known that Dr. Alvarez would act negligently and that it did not itself act negligently in its credentialing process.

■ South Peninsula failed to establish as a matter of law that it did not have actual or constructive notice of Dr. Alvarez's potential negligence. In *Ward*, we recognized that a showing that the hospital should have known that the physician would act negligently "generally will consist of evidence that the physician either lacked standard credentials or previously had been the subject of a malpractice suit or disciplinary proceedings."[50] The prior malpractice cases against Dr. Alvarez were relevant to whether South Peninsula should have known that Dr. Alvarez would act negligently, whether the hospital should have investigated, and whether an investigation would have caused the hospital to find something to make it withhold, restrict, or condition Dr. Alvarez's privileges.[51] South Peninsula maintains that the prior cases against Dr. Alvarez would not be admissible since the Fletchers provided no evidence that any of those cases were similar to theirs.[52] To prevail at the summary judgment stage, however, the hospital must point to uncontroverted record evidence affirmatively establishing that it exercised due care in reviewing Dr. Alvarez's credentials and history.

■ South Peninsula similarly failed to establish as a matter of law that it acted in a non-negligent manner in its privilege-renewing process. South Peninsula did not demon-

---

**47.** *See Alakayak v. British Columbia Packers, Ltd.*, 48 P.3d 432, 447–48 (Alaska 2002).

**48.** The Fletchers claim that hospitals have a duty to ensure their independent contractor physicians are not "financially incompetent," citing *Robert v. Paschall*, 767 So.2d 1227, 1228 (Fla. Dist.App.2000). As South Peninsula correctly notes, however, this case imposed a duty on Florida hospitals based on a statute to which Alaska has no analogue. In fact, the court in *Robert* specifically stated that the statutory duty it imposed "is separate and distinct from ... the corporate negligence doctrine." *Id.*

**49.** *Ward v. Lutheran Hosps. & Homes*, 963 P.2d 1031, 1033 n. 2 (Alaska 1998).

**50.** *Id.* (citation omitted).

**51.** *See* Alaska R. Evid. 404(b)(1); *see also Elam v. College Park Hosp.*, 132 Cal.App.3d 332, 183 Cal. Rptr. 156, 165–66 (1982); *Raschel v. Rish*, 110 A.D.2d 1067, 488 N.Y.S.2d 923, 924 (N.Y.App. Div.1985).

**52.** *See Purcell v. Zimbelman*, 18 Ariz.App. 75, 500 P.2d 335, 343 (1972); *see also Johnson v. Misericordia Cmty. Hosp.*, 97 Wis.2d 521, 294 N.W.2d 501, 517 (Wis.App.1980), *aff'd*, 99 Wis.2d 708, 301 N.W.2d 156 (1981).

strate that it was entitled to judgment as a matter of law simply by stating that the Fletchers did not know what actions the hospital took. The Fletchers asked South Peninsula to provide "all documents in the hospital's possession relating to the granting of privileges to Dr. Alvarez" and to make available for deposition someone with knowledge of the privilege-granting process. Three weeks after filing its motion for summary judgment, South Peninsula informed the Fletchers that it was still looking into who the proper person would be to testify about granting privileges to Dr. Alvarez;[53] it later identified its hospital administrator as the best person. As for the document request, all South Peninsula produced was Dr. Alvarez's "credentialing file" with the reappointment questionnaire; there were no documents concerning a hospital investigation. If investigatory documents concerning the renewal of Dr. Alvarez's privileges existed, South Peninsula should have produced them, either in response to the Fletchers' request or as part of its initial disclosure under Civil Rule 26.[54] If they did not exist, then, drawing all reasonable inferences in favor of the non-moving party, the court could presume that the hospital conducted no investigation. No facts had been established, therefore, concerning what actions the hospital took in credentialing Dr. Alvarez; South Peninsula never even provided an affidavit describing the process it had undertaken. South Peninsula thus could not carry its burden of establishing that it had not acted negligently in its credentialing process.

We therefore reverse the trial court's grant of summary judgment on the issue of negligent credentialing because South Peninsula failed to carry its burden of demonstrating that it was entitled to summary judgment as a matter of law.[55]

### D. The Trial Court Abused Its Discretion in Denying the Fletchers' Motion to Relax Expert Disclosure Requirements.

Because we are remanding for trial, we must address the Fletchers' argument that the trial court abused its discretion in denying their motion to relax the expert disclosure rules with regard to Dr. Sayer. We review a trial court's discovery rulings for abuse of discretion.[56] "We will find an abuse of discretion when we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its [discovery] ruling."[57]

The Fletchers—who had identified Dr. Sayer as an expert on damages, the standard of care given to Fletcher, and the privileging procedures at South Peninsula— asked the trial court to relax the requirements in Civil Rule 26(a)(2)(B) that experts must produce an expert report and a curriculum vitae. Rule 26, however, does not apply here, as it speaks only of witnesses who are "retained or specially employed to provide expert testimony[.]"[58] The Fletchers did not retain or specially employ Dr. Sayer to be an expert witness.[59] Rather, he was Fletcher's

---

**53.** It is clear, therefore, that South Peninsula could not have carried its burden at the time it filed its summary judgment motion.

**54.** Alaska R. Civ. P. 26(a)(1) ("*Initial Disclosures.* Except to the extent otherwise directed by order or rule, a party shall, without awaiting a discovery request, provide to other parties: (A) the factual basis of each of its claims or defenses....").

**55.** The Fletchers argue that they should not have to provide expert testimony in a negligent credentialing case, or in the alternative that they could rely on South Peninsula's administrator as an expert and should be given extra time to depose him. As South Peninsula correctly points out, however, the trial court never held that the Fletchers had to provide expert testimony or that they could not use the hospital's administrator.

The trial court merely stated that it "[did not] know whether you need an expert or not from this information." The trial judge also stated that "I don't think there's any question in Alaska [that] you can use their expert[.]" Since there was no adverse ruling on these issues, we decline to address them.

**56.** *Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1119 (Alaska 2002).

**57.** *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998).

**58.** Alaska R. Civ. P. 26(a)(2)(B).

**59.** Retained experts are presumed to be under the control of the party retaining them and are thus presumed to be cooperative. Since Dr. Say-

treating physician, a testimonial role that we have recognized to be unique. In *Miller v. Phillips*, we noted that "[w]hen physicians are called to testify about matters pertaining to the treatment of their patients, the distinction between an expert witness and a fact witness inevitably becomes blurred."[60] As Dr. Sayer was not a retained expert witness, the requirements of Rule 26 did not apply.

The purpose behind Rule 26, however, is still important; a defendant has a right to discover what expert testimony a treating physician will provide. Despite Rule 26's literal inapplicability, the trial court had the discretion to effectuate the Rule's basic purpose. For instance, the court could have required the Fletchers to subpoena and depose Dr. Sayer as to the questions they would ask him on the stand. By denying the Fletchers' motion and applying the Rule 26 requirements, the trial court essentially prevented Fletcher's expert treating physician from testifying. This is too harsh a result, given the other options available to the court. Accordingly, we reverse the denial of the Fletchers' motion to relax the expert disclosure requirements with respect to Dr. Sayer.[61]

## IV. CONCLUSION

Because we conclude that extension to the operating room of the non-delegable duty identified in *Jackson v. Power* is unwarranted and unnecessary, we AFFIRM the trial court's denial of the Fletchers' motion for partial summary judgment on the issue of non-delegable duty.

Because it is undisputed that Fletcher went to see a specific doctor for care and that South Peninsula repeatedly provided Fletcher with a disclaimer of a relationship with Dr. Alvarez, we AFFIRM the trial court's grant of South Peninsula's motion for partial summary judgment on the issue of vicarious liability under apparent authority.

Because South Peninsula failed to carry its burden of showing that it was entitled to summary judgment as a matter of law, we REVERSE the trial court's grant of South Peninsula's motion for partial summary judgment on the issue of the hospital's direct liability under corporate negligence for its allegedly negligent credentialing of Dr. Alvarez.

Because Dr. Sayer is not a retained expert and because other less harsh options were available to the trial court to effectuate the purposes of disclosure, we REVERSE the trial court's denial of the Fletchers' motion to relax the expert disclosure rules of Civil Rule 26(a)(2)(B).

REVERSED and REMANDED for further proceedings consistent with this opinion.

EASTAUGH, Justice, not participating.

---

er was not a retained expert witness, the Fletchers had no control over whether he chose to prepare a curriculum vitae or an expert report.

60. 959 P.2d 1247, 1250 (Alaska 1998).

61. This case is distinguishable from *Zaverl v. Hanley*, 64 P.3d 809, 813–15 (Alaska 2003), in which we concluded that it was error to allow a defendant doctor to testify to matters his lawyer had instructed him not to address at his pre-trial deposition. Unlike in *Zaverl*, Dr. Sayer would not be testifying on matters outside his realm of

knowledge as a general surgeon. Further, Dr. Sayer is not a party to this case, and because he is not a retained witness, the Fletchers have limited control over his level of cooperation in his deposition, which seemed rather low. Finally, there were no assertions in this case, as there were in *Zaverl*, that Dr. Sayer would not be called to testify on issues such as the standard of care. In sum, the key distinction is that it does not appear that the Fletchers were trying to hide anything or to preserve a surprise for trial.