NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

COLIN J.,                                     )
                                              )   Supreme Court No. S-14665
                    Appellant,                )
                                              )   Superior Court No. 3AN-11-07691 CI
          v.                                  )
                                              )   MEMORANDUM OPINION
SUSAN J.,                                     )         AND JUDGMENT*
                                              )
                    Appellee.                 )   No. 1459 - May 8, 2013
                                              )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter A. Michalski, Judge.

Appearances: Colin J., pro se, Anchorage, Alaska, Appellant. Kathryn Ruff, ANDVSA Legal Advocacy Project, Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Carpeneti, Justice, not participating.]

I.    INTRODUCTION

          During Susan and Colin J.'s[1] second marriage, Susan suffered from mental illness and Colin committed two reported acts of domestic violence against their children. At their divorce trial, Susan presented evidence that Colin had abused her and the children physically, mentally, and sexually. The superior court granted Susan sole

---

\*       Entered under Alaska Appellate Rule 214.

[1]      We have used pseudonyms throughout this opinion for all family members.

legal and physical custody and barred Colin from any contact with the children until he produced professional evidence that such contact would no longer be harmful to them. Colin appeals the superior court's decision on custody and several of its rulings on discovery and the admissibility of evidence at trial. We affirm.

## II. FACTS AND PROCEEDINGS

Colin and Susan J. married for the second time in 2004. They have three children together: Fiona, born in 2005; John, born in 2006; and Gayle, born in 2008. Susan has another minor child, Joseph (born in 1999), who lived with the family as well.

Susan suffered from mental illness during the second marriage. She was diagnosed with depression, post-traumatic stress disorder, and a personality disorder. She was hospitalized several times, told health-care providers that she stayed in her bedroom for years at a time, and had thoughts of killing herself and her children.

The marriage was also marked by two reported instances of domestic violence by Colin against the children. The first incident occurred in April 2009, when Colin struck Joseph on the face and head while the boy was fighting with his sister Fiona. Colin claimed that he hit Joseph accidentally while trying to keep him from harming his sister.

The second incident occurred in January 2011. Colin was home alone with the children when two of them began to fight in a dark room. Colin responded by throwing a lightbulb, which shattered and caused some small cuts to John's face. That night Colin checked himself into a hospital, where he reported that he was "afraid he will hurt his family." He reported that he was extremely stressed by his chaotic home life and that he had been emotionally and verbally abused by his wife.

Susan obtained a Long-Term Domestic Violence Protective Order for herself and the children. Colin also faced a criminal charge of 4th degree assault, which

was heard in Veteran's Wellness Court and dismissed after he successfully completed the Vet Center Anger/Domestic Violence Program.

Susan filed a complaint for divorce. At trial, the children's counselor testified that the children were afraid of their father and that they claimed he had sexually and physically abused them. The children's psychiatrist testified as well, giving her opinion that the children's anxiety and other symptoms had shown improvement through therapy but that contact with Colin would cause the children to regress.

Susan and Colin gave conflicting testimony. Susan testified that she had endured mental, physical, and sexual abuse from Colin, which Colin denied. He testified that Susan had been overly critical of his parenting style and would accuse him of abuse if he so much as picked up a child the wrong way. Colin also denied abusing his children.

The trial court awarded sole legal and physical custody of Fiona, John, and Gayle to Susan, finding that she was effectively managing her mental health issues and that Colin had "given the children plenty of reasons to fear him," including "his inappropriate sexual behavior with them." Relying on the opinion of the children's psychiatrist, the court also ordered that Colin have no contact with the children until he was able to submit professional evidence that they would not be harmed by it.

Colin appeals. He argues that the superior court erred (1) in precluding effective discovery from the counselors; (2) in admitting the hearsay statements of the children; and (3) in its analysis of the statutory best interests factors and determination of custody.[2]

---

[2] In his notice of appeal, Colin claimed that he was prejudiced at trial because Alaska Legal Services Corporation arranged for pro bono representation for Susan while
(continued...)

## III.  DISCUSSION

### A.  Standard Of Review

We review discovery rulings for abuse of discretion.[3] "A trial court's decision regarding the admissibility of evidence, including expert testimony, is generally reviewed for abuse of discretion; but when admissibility turns on a question of law, we apply our independent judgment."[4]

"We reverse a trial court's custody determination if the court's critical factual findings were clearly erroneous or if we find that the trial court abused its discretion."[5] "A finding of fact is clearly erroneous only when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[6] "We will grant especially great deference when the trial court's factual

---

[2](...continued)
denying him assistance.  Colin did not brief this argument, however, so we do not address the issue.  *See Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) ("[I]ssues not argued in opening appellate briefs are waived.  This rule applies equally to pro se litigants," citing *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001); *Gilbert v. Sperbeck*, 126 P.3d 1057, 1061 (Alaska 2005)).

[3]     *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003) (citing *Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1119 (Alaska 2002)).

[4]     *Laidlaw Transit, Inc. v. Crouse ex rel. Crouse*, 53 P.3d 1093, 1097 (Alaska 2002) (footnote omitted) (citing *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000) (admissibility of evidence); *State v. Coon*, 974 P.2d 386, 398 (Alaska 1999) (expert testimony); *Landers v. Municipality of Anchorage*, 915 P.2d 614, 616 n.1 (Alaska 1996) (question of law)).

[5]     *Schmitz v. Schmitz*, 88 P.3d 1116, 1121 (Alaska 2004) (citing *West v. West*, 21 P.3d 838, 841 (Alaska 2001)).

[6]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997) (citing
(continued...)

findings require weighing the credibility of witnesses and conflicting oral testimony."[7] "We will find that the trial court abused its discretion if it has considered improper factors, failed to consider relevant statutory factors, or assigned disproportionate weight to some factors while ignoring others."[8]

**B.    The Superior Court Did Not Abuse Its Discretion In Admitting The Counselors' Testimony.**

**1.    The children's treatment providers were not subject to the expert witness requirements of Civil Rule 26.**

Colin argues that the superior court improperly allowed the children's counselor and psychiatrist to offer expert testimony without holding them to the requirements of the rules of discovery, which provide among other things that expert witnesses must submit a written report before trial, setting out their opinions.[9] But the two treatment providers were not retained experts; their testimony was "based on experience attending to the patient rather than being hired to review a file and develop an opinion."[10] The children's counselor, Laurel Searcy, LPC, testified that she was retained for purposes of treatment, and she based her testimony on a combination of her observations of the children and her professional expertise.[11] The children's psychiatrist,

---

[6](...continued)
*Money v. Money*, 852 P.2d 1158, 1161 (Alaska 1993)).

[7]    *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009) (citing *Vezey v. Green*, 171 P.3d 1125, 1128-29 (Alaska 2007)).

[8]    *Schmitz*, 88 P.3d at 1121 (citing *West*, 21 P.3d at 841).

[9]    *See* Alaska R. Civ. P. 26(a)(2)(B).

[10]    *Thompson v. Cooper*, 290 P.3d 393, 400 (Alaska 2012).

[11]    *See Miller v. Phillips*, 959 P.2d 1247, 1250 (Alaska 1998) ("When
(continued...)

Dr. Jill Abram, also examined the children as a member of their treatment team and based her testimony on her direct observations. Neither of these treatment providers was subject to the expert disclosure requirements of Civil Rule 26(a)(2)(B).[12]

> **2. There was no abuse of discretion in the superior court's accommodation of Colin's late request for discovery from the counselors.**

Colin argues that he was prevented from carrying out meaningful pretrial discovery from the children's treatment providers. He asserts that he did not find out their identities until right before trial, that he was denied the opportunity to depose them, and that he was allowed only fifteen minutes to interview them. It is true that the superior court took the unusual step of restricting Colin's access to the providers' identities. Under the circumstances of this case, however, we find no abuse of discretion. "Civil Rule 26(c) allows the court to deny discovery, to designate certain terms and

---

[11](...continued) physicians are called to testify about matters pertaining to the treatment of their patients, the distinction between an expert witness and a fact witness inevitably becomes blurred. Courts in other jurisdictions have often recognized that treating physicians need not be listed as expert witnesses on pretrial disclosure lists, even when their proposed testimony involves opinions regarding their patients' injuries, treatment, and prognoses."). This analysis may extend to other witnesses besides physicians in appropriate cases. In *Getchell v. Lodge*, we affirmed a trial court's decision to allow a state trooper who had been identified as a fact witness to offer testimony about the cause of an accident, since his "testimony incorporated both his observations as a percipient witness investigating the scene and his conclusions about causation based on over twenty-two years as a state trooper investigating accidents." 65 P.3d 50, 56 (Alaska 2003).

[12]    *Miller*, 959 P.2d at 1250*; Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 844-45 (Alaska 2003).

conditions for discovery, to regulate the method of discovery, and to limit the scope of discovery."[13]

The restrictions on access to the treatment providers' identities were imposed several months before trial when Susan submitted letters from them in opposition to Colin's motion for interim visitation. In the first letter, the counselor, Searcy, opined that contact with Colin would be inappropriate given the children's disclosures about possible abuse by their father.[14] Although Colin was served with the letter and opposition, Searcy's name and contact information had been redacted.

Searcy subsequently wrote a supplemental letter, co-signed by Abram as the children's psychiatrist, in which she described in detail the children's allegations of abuse. Susan's attorneys offered to provide Colin's attorney with an unredacted copy of this second letter if he would agree to keep the treatment providers' names and contact information from his client, but the attorney refused to do so. Susan asked the court to allow her to submit the supplemental letter under seal and with the treatment providers' names and contact information redacted. She asserted that any contact with Colin could harm the children's progress in treatment. Colin did not oppose Susan's motion.

On November 28, 2011, the superior court ordered that Colin's access to the treatment providers' identities be restricted "until the defendant has established to this Court's satisfaction that defendant has an actual and legitimate need to be personally informed of the treatment[] providers' names and addresses, and will not take advantage of the information to make unpermitted contact with the children." Colin made no

---

[13]    *DeNardo v. Bax*, 147 P.3d 672, 677 (Alaska 2006).

[14]    The Long-Term Domestic Violence Protective Order that Susan obtained after the separation, which prohibited Colin's contact with the children, was still in effect at that time.

attempt in the succeeding months to make the required showing, nor did he conduct any timely discovery into the providers' qualifications, treatment, or opinions.[15]

With trial set to begin in mid-February 2012, Colin moved for a continuance on February 6, asserting the need to conduct discovery into Susan's "mental health status as well as the status of the children's counseling and schooling." Susan opposed the motion but did, for the first time, disclose to Colin the name of the children's counselor, Searcy.[16] In reply, Colin argued that he needed more time to depose the counselor now that he had her name, but the court denied the requested continuance. On February 15, the day trial was set to begin, Colin filed a motion in limine to exclude the opinions and testimony of both treatment providers. Susan's attorneys provided Colin with unredacted copies of the two letters, disclosing the identity of the psychiatrist, Dr. Abram, who had co-signed the second of the two letters as Searcy's supervisor and a member of the children's treatment team. Colin's attorney again asked for a continuance to conduct discovery and take depositions. Susan's counsel objected, arguing that Colin had had months to conduct discovery and had simply failed to do so.

The superior court decided to hold the parties to the scheduled trial days but to give Colin's attorney the opportunity to interview the treatment providers before they testified. The judge stated that he expected the questioning to take thirty to forty-five minutes or "maybe a little more than that, depending on . . . how things go," but the record reflects that the parties spent less than fifteen minutes with the two witnesses.

---

[15]    Susan asserts that Colin sent a set of discovery requests to her on February 1, about 30 days late and about two weeks before trial was set to begin. The requests are not in the record, but requests submitted on that date would have been untimely under the pretrial scheduling order.

[16]    Susan contends that she gave Colin the first letter, unredacted, when the parties exchanged exhibits a week before trial. Colin's attorney acknowledged having Searcy's name by February 9, 2012.

Following the conference, Colin's attorney asserted that it had been an "absolute and complete farce," and he renewed his objection to the two witnesses presenting any expert testimony.[17] The superior court decided to proceed with the presentation of evidence and "see how things work out." When the two witnesses testified, Colin's counsel objected to only one question on grounds that it called for expert testimony, and the trial court sustained the objection.

We note that the superior court's restriction on Colin's access to the treatment providers' identities was contrary to the usual rules of discovery, and, though Susan's motion to redact the names was unopposed, the justification for granting it is not apparent from the record before us. However, given that the order clearly stated Colin's burden for obtaining relief from the restriction; that Colin made no attempt to meet that burden; that Colin was provided the substance of the treatment providers' opinions months before trial; that Colin attempted no timely discovery in this area; and that the court provided Colin the opportunity to interview the witnesses immediately before they testified, we conclude that the superior court did not abuse its discretion in its accommodation of Colin's tardy efforts at discovery from these witnesses.[18]

---

[17]    Susan's attorney stated for the record that "most of what plaintiff sought to accomplish in the [conference] was to immediately try to fish for [treatment] records and then shortly afterwards cut it off."

[18]    We note also that Colin, though acting pro se on appeal, was represented by counsel at trial. Our analysis of the discovery issue might be different had he been unrepresented, given the court's obligation to inform pro se litigants of the proper procedure for accomplishing what they are apparently attempting to do. *See Larson v. State, Dep't of Corr.*, 284 P.3d 1, 8 (Alaska 2012).

**C.    The Superior Court Did Not Err In Admitting The Children's Hearsay Statements**.

Colin argues that the superior court improperly admitted hearsay statements that the children made to the two treatment providers.[19] But Colin waived any objection to the majority of the hearsay evidence he addresses on appeal. "In administering the rules of evidence it is a cardinal precept that if one has an objection to the introduction of evidence he must voice his objection promptly, and that if he fails to do so the objection is waived."[20] With one exception, the substance of the treatment providers' testimony came in without objection; indeed, Colin's attorney expressly waived any objection to the counselor's testimony about statements the children had made to her.[21] Colin's attorney did make a hearsay objection when the counselor related Fiona's belief that her school had gone through a lockdown in order to keep her father out. (The lockdown was actually a drill.) Susan's attorney argued that the lockdown comments fell under the state-of-mind exception, to show Fiona's fear of her father, and the judge overruled Colin's objection. This ruling was not an abuse of discretion.

Even if Colin had not waived objection to the majority of the treatment providers' testimony, the testimony was admissible under the medical treatment

---

[19]    Colin's hearsay argument concerns only the treatment providers' testimony, not their letters, as the judge did not admit the letters into evidence.

[20]    *Thomson v. Wheeler Constr. Co.*, 385 P.2d 111, 115 (Alaska 1963). *See also* Commentary Alaska E. R. 103(a) ("In the case of a ruling admitting evidence, to constitute grounds for a reversal an error must affect a substantial right of the party and a timely objection stating the specific grounds of the objection must be made.").

[21]    While Colin's attorney did make a hearsay objection at the beginning of Searcy's testimony, this objection was confined to the statements in the treatment providers' letters and did not extend to Searcy's testimony about what the children had told her.

exception to the hearsay rule. Alaska Evidence Rule 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This hearsay exception applies to mental health professionals if counseling sessions are for the purpose of treatment.[22] Traditionally, statements about an assailant's identity were not admissible under the medical treatment exception on the grounds that they were "seldom, if ever, sufficiently related to diagnosis or treatment."[23] But the law in this area has been evolving.[24] We have recognized that the identity of the assailant may be relevant to treatment in child abuse cases.[25]

---

[22] *Martha S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 268 P.3d 1066, 1077-79 (Alaska 2012); *see also* Commentary Alaska E. R. 803(4) ("[T]he statement need not have been made to a physician.").

[23] *Sluka v. State*, 717 P.2d 394, 399 (Alaska App. 1986) (citing *United States v. Iron Shell*, 633 F.2d 77, 84 (8th Cir. 1980)). *See also Clark v. State*, 199 P.3d 1203, 1205 (Alaska App. 2009) ("[T]he medical diagnosis and treatment hearsay exception does not normally encompass a patient's identification of the person who hurt them or a patient's attributions of fault.").

[24] *See State v. Nollner*, 749 P.2d 905, 908 (Alaska App. 1988) (holding, in review of grand jury proceeding, that "the authority in favor of admitting statements [indicating the identity of a child's abuser] into evidence is sufficiently strong so that the prosecution could reasonably have presented this evidence in good faith believing that the evidence would be admissible at trial"); *Sluka*, 717 P.2d at 399 & n.3 (holding that child's statement to doctor that her father abused her was inadmissible because there was no showing as to child's unavailability, but noting that other jurisdictions have allowed children's statements identifying their abusers under the medical treatment exception).

[25] *Martha S.*, 268 P.3d at 1079. *See also, e.g.*, *United States v. Renville*, 779 F.2d 430, 436-38 (8th Cir. 1985) (holding that a child abuse victim's identification of a
(continued...)

In *Martha S. v. State*, a child-in-need-of-aid case, we for the first time applied the medical treatment exception to statements concerning child abuse in a civil case.[26] We concluded that "the superior court did not abuse its discretion by admitting [a child's] statements to [her clinical social worker], including the statements identifying her brothers as potential assailants,"[27] where the social worker "testified that her sessions with [the child] were for the purpose of treatment and that she was not acting as a forensic investigator."[28] Like the social worker in *Martha S.*, the children's counselor in this case was retained to provide treatment to the children rather than to provide expert

---

[25](...continued) member of her immediate household as her abuser was "reasonably pertinent to treatment" because "[t]he exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser" and because treatment may involve removing the abuser from the home); *Hawkins v. State*, 72 S.W.3d 493, 498 (Ark. 2002) ("[The child's] identification of [her stepfather] as her abuser allowed [her physician] to take steps to treat the emotional and psychological injuries which accompanied the rape.").

[26]    268 P.3d at 1079. We have stated that due process concerns related to out-of-court abuse allegations are more troubling in criminal trials than in child-in-need-of-aid proceedings, which are concerned not "with imposing either criminal penalties or civil liability on the alleged abuser," but rather with "whether the child's well-being is imperiled." *Id.* at 1078 (citing *In re A.S.W.*, 834 P.2d 801, 806 (Alaska 1992)). A civil custody case is similarly focused on the well-being of the child rather than on punitive action. *See, e.g.*, *Ebertz v. Ebertz*, 113 P.3d 643, 647 (Alaska 2005) ("The trial court must base an initial custody determination on the children's best interests . . . ." (citing *West v. West*, 21 P.3d 838, 841 (Alaska 2001)).

[27]    *Martha S.*, 268 P.3d. at 1079.

[28]    *Id*.

testimony during litigation.[29] We see no abuse of discretion in the court's admission of the disputed testimony.[30]

Colin also argues that the children's hearsay statements could have resulted from Susan's coaching. At trial, the children's counselor and psychiatrist testified that the statements were credible and were likely not the product of coaching.[31] The superior court did not clearly err in crediting the treatment providers' opinions about the children's statements. We also find no merit in Colin's argument that the treatment providers were biased because of their treatment relationship with Susan and the fact that "[a]ll three are women with a common professional bond."[32]

---

[29] *See id.*

[30] The superior court did not make a finding in this case, as it did in *Martha S.*, that the children understood the purpose of their counseling sessions; however, we do not find this difference to be grounds for distinguishing *Martha S.* given the other similarities between the cases. *Id.*

[31] Searcy, the counselor, testified that the children were consistent in their statements. Both treatment providers refuted Colin's contention that the children's use of the term "penis" (along with the mispronunciation "peanut") indicated that the children were coached. Searcy testified that some families teach their children the anatomical terms for body parts, and that children's use of such terms does not necessarily raise suspicions of coaching. The psychiatrist, Dr. Abram, testified that children who have been abused will frequently use anatomical terminology.

[32] Susan has an education specialist graduate degree with an emphasis in school psychology. She previously worked as a school psychologist.

**D.    The Superior Court Did Not Abuse Its Discretion In Its Custody Decision.**

Custody determinations are based upon the child's best interests, using the factors listed in AS 25.24.150(c).[33]   Colin argues that the superior court erred in granting

---

[33]    *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004).  AS 25.24.150(c) provides that

> [i]n determining the best interests of the child the court shall consider
>
> (1)    the physical, emotional, mental, religious, and social needs of the child;
>
> (2)    the capability and desire of each parent to meet these needs;
>
> (3)    the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4)    the love and affection existing between the child and each parent;
>
> (5)    the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
>
> (6)    the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or the child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
>
> (7)    any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;
>
> (8)    evidence that substance abuse by either parent or other

(continued...)

Susan sole custody despite her mental health history, while prohibiting him from any contact with the children.

### 1. The superior court did not clearly err in its assessment of Susan's mental health.

Citing Susan's hospitalizations, past suicidal and homicidal ideations, and diagnoses of clinical depression and personality disorder, Colin argues that Susan is liable to relapse and is a danger to the children.[34] The superior court considered this evidence and concluded that, due to Susan's continuing treatment, she was currently able "to act effectively in the world," which included taking care of her children.

"The mental health of a parent is a proper topic of inquiry at a custody hearing; however, the basis of the custody determination is the best interests of the child and a parent's conduct is relevant only insofar as it has or can be expected to negatively affect the child."[35] The evidence did show that Susan's mental health problems had seriously impacted her ability to care for the children in the past. She had experienced

---

[33](...continued)
>    members of the household directly affects the emotional or
>    physical well-being of the child;
>
>    (9)    other factors that the court considers pertinent.

[34]    Colin also disputes the superior court's finding that Susan "has experienced mental abuse" from him, arguing that Susan's mental health issues during the marriage were instead caused either by prior abuse or by Susan's personality disorder. The record does show that Susan experienced abuse before she married Colin. But the record also contains evidence that Susan endured mental, physical, and sexual abuse from Colin.

[35]    *Morel v. Morel*, 647 P.2d 605, 608 (Alaska 1982) (citing *Craig v. McBride*, 639 P.2d 303, 306 (Alaska 1982); *Bonjour v. Bonjour*, 566 P.2d 667, 669 (Alaska 1977); *Horutz v. Horutz*, 560 P.2d 397, 401 (Alaska 1977)).

homicidal ideations regarding the children. For perhaps as long as several years she lived in her bedroom and raised Gayle and Joseph from there.

The record also indicates, however, that by the time of trial Susan was effectively managing her mental health issues and was able to provide for the children's needs. Her counselor's case notes from earlier that year, which were admitted at trial, stated that Susan was functioning well and appropriately prioritizing the children. The counselor testified that Susan had made "remarkable progress" during the past year and that the children were safe with her.[36] We cannot say that the trial court's findings about Susan's improving mental health and her consequent ability to care for her children were clearly erroneous.

**2. The superior court did not clearly err in finding that Colin did not overcome the statutory domestic violence presumption.**

Under AS 25.24.150(g), "[t]here is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child." In order to rebut the presumption the perpetrating parent must show, by a preponderance of the evidence, that (1) he has completed a batterers' intervention program; (2) he does not engage in substance abuse; and (3) the best interests of the child require that he participate as a custodial parent.[37]

Colin argues that the superior court should have found that he overcame the rebuttable presumption, given his completion of a domestic violence program and his

---

[36] Susan's counselor also testified that Susan's previous homicidal ideations concerning the children had been focused on sparing them from their father's abuse.

[37] AS 25.24.150(h).

participation in numerous parenting classes and support groups. But completion of intervention programs is not the only proof needed to overcome the presumption; most importantly, the parent must prove that his participation is in "the best interests of the child."[38] The superior court in this case was "not convinced that the evidence of completion of the abuse intervention program is sufficient to overcome what appears to be a history of the defendant mentally abusing the plaintiff. In light of his strong denial of mistreating his children in a manner that has resulted in their alienation, he simply has not dealt with his own conduct in a meaningful way." This factual finding was not clearly erroneous.

### 3. The superior court did not abuse its discretion in prohibiting Colin from visitation with the children.

Finally, Colin contends that the superior court ordered a de facto termination of his parental rights by barring him from all contact with his children until he provides professional evidence that they will not be harmed by it. He argues that since the court found his completion of the domestic violence program insufficient to overcome the rebuttable presumption, he is left with no viable avenue for reestablishing his right to contact.

"[T]he best interests of the child standard normally requires unrestricted visitation with the noncustodial parent. Therefore, an order requiring that visitation be supervised must be supported by findings that specify how unsupervised visitation will adversely affect the child's [best interests]."[39] A total prohibition on visitation should similarly be supported by specific findings. Here, the superior court's decision to bar all contact was based on adequate findings, relying as it did on the opinions of the children's

---

[38]     AS 25.24.150(g).

[39]     *J.F.E. v. J.A.S.*, 930 P.2d 409, 413-14 (Alaska 1996).

counselor and psychiatrist that any contact with Colin would cause regression in the children's fragile but improving mental health.

In *J.F.E. v. J.A.S.* and subsequent cases, we expressed our preference that the trial court outline a plan by which restrictions on visitation may be lifted.[40] The court should also outline a plan if visitation has been prohibited entirely. Yet where a parent's behavior is not easily remedied, the court's plan need not be specific.[41] In this case, the superior court ordered that Colin "have no contact with the children until professional evidence is submitted to the court that contact with the father will not be harmful to the children and that all visitation is denied until such proof is made to the court." We interpret this statement as an acknowledgment of the court's duty under *J.F.E.* to allow the parent an opportunity to lift a visitation restriction. We also observe that the sole condition for resuming contact depends on professional evidence of how it may affect the children. Since this evidence is not in Colin's control, he may request the superior court's help in obtaining it.

IV. CONCLUSION

We AFFIRM the superior court's decision.

---

[40]     *See id*. at 414; *Monette v. Hoff*, 958 P.2d 434, 437 (Alaska 1998).

[41]     *See Monette*, 958 P.2d at 437.