Russell J. **PETERSON**, Jr., Appellant,

v.

**Tyna EK,** Appellee.

No. S–10535.

Supreme Court of Alaska.

June 25, 2004.

Russell J. Peterson, Jr., pro se, Juneau.

Tyna Ek, pro se, Seattle, Washington.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Russell Peterson and Tyna Ek entered into a contract to renovate and sell a boat, the *O'Hana Kai*. Peterson breached the contract and Ek successfully brought a claim in the superior court to recoup damages resulting from the breach. Peterson appeals the decision of the superior court finding him liable to Ek for damages resulting from breach of contract, trespass to chattels, and attorney's fees. We affirm the superior court in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Tyna Ek and Russell Peterson met in Seattle during the summer of 1999. Ek was a resident of Washington state. During the course of their friendship, Peterson told Ek about a boat he had previously owned, the *O'Hana Kai.* Peterson told Ek that he had sold the boat to a friend with an agreement that he would have an option to buy the boat back in the future. According to Ek, she did not want to buy a boat, but eventually agreed to do so at Peterson's urging, provided that the two enter into a written contract. Ek commissioned Jim Sepel to survey the vessel, which was located in Juneau. Sepel estimated the value of the vessel at $50,000.[1] Sepel warned Ek that the boat was a "money pit" that she should avoid; Ek's financial advisor cautioned her similarly.

On January 18, 2000 Peterson and Ek entered into a contract detailing their mutual rights and responsibilities if and when Ek purchased the *O'Hana Kai.* The parties' intent in entering into the contract was "to pool Ms. Ek's financial resources with Mr. Peterson's labor and renovation skill and effort to maximize the value of the Boat for resale during the summer of 2001." Ek would pay the entire purchase price of the vessel and be its sole legal owner. The contract required Peterson "[a]t his own cost and expense, and utilizing his labor ... [to] completely refurbish the Boat and complete efforts to renovate the Boat, converting it to a pleasure boat with the goal of maximizing resale value." Peterson was responsible for all costs and labor required to make the vessel seaworthy so that it could be transported from Juneau to Seattle within one month of the date of purchase. Peterson was responsible for keeping the vessel safely moored in Seattle, for moorage costs, and for any fines or fees incurred as a result of his use or renovation of the boat. Ek was to provide Peterson with $2,000 for the vessel's renovation, which she would recoup upon the vessel's sale. The contract provided that Peterson could live on the vessel rent free until June 15, 2001 so long as he was making reasonable progress in renovating the vessel and was not in breach of the contract. Ek had the right to sell the vessel after June 15, 2001 at a price left to her discretion. The proceeds from the sale would be allocated in the following order. First, Ek would be reimbursed for the full purchase price of the vessel, including the $2,000 cash advance and all other cash expenses she incurred as a result of her ownership of the vessel. Next, Peterson would be reimbursed for any costs associated with his renovation efforts that could be verified by receipt. Finally, any remaining proceeds, minus the costs of sale, would be split equally between Peterson and Ek. Proceeds would be similarly distributed in the event that Peterson breached the contract, the only difference being that Peterson's potential share of the profits would be capped at $5,000 if he breached the contract within six months of signing it. A choice of law provision provided that the contractual terms would be interpreted in accordance with Washington law.

Ek purchased the vessel for $43,000 from Murray Damitio in February 2000 and registered it in her name. Ek provided Peterson with a "Permission of Use" that gave him "full charge and capacity to act in [Ek's] behalf with regard to all matters involving the above named vessel in [her] absence."[2] Peterson, aided by a $1,000 loan from Ek, left Seattle and went to Juneau in February 2000 to begin work on the vessel. Ek loaned Peterson her cellular telephone so that they could communicate while he prepared the vessel for the trip to Seattle. According to Peterson, when he arrived in Juneau and saw the vessel, he realized that renovations were more extensive than he had originally thought. The trial court found that Peter-

---

1. Sepel conducted another survey of the vessel in March 2001, which indicated that the vessel was worth $55,000. Sepel concluded that much of the increase in value after February 2000 was due to the fact that the engine had been rebuilt, a task which had been completed primarily by someone other than Peterson.

2. Ek revoked the Permission of Use on September 3, 2000. The superior court made a factual finding based on testimony presented at trial that the "Permission of Use" was only intended to give Peterson the powers necessary to travel through Canada with the vessel.

son's communications with Ek nonetheless suggested that, despite the delays, he anticipated traveling to Seattle sometime in April 2000.

Ek stated that Peterson contacted her periodically during that period and told her "various stories about why the boat needed additional work before it could be brought to Seattle." According to Ek, Peterson asked her to advance him money so that he could make repairs to the vessel's engine that were necessary to get the vessel to Seattle. Ek wired Peterson a total of $4,000 in March and April 2000. According to Ek, $1,500 was a loan for the purchase of engine parts, $500 was to pay a criminal fine owed by Peterson in Juneau, and $2,000 was to be used to pay for moorage and a mechanic.

By May 2000, Ek began to receive unanticipated bills for vessel parts and moorage, unauthorized charges on her credit card, and extremely high cell phone bills. Ek was charged several thousands of dollars by vendors for mechanical parts that Peterson ordered without Ek's authorization. Ek was also charged for moorage at Trucano Construction. Ek paid Trucano $1,391.01, but instructed Trucano that Peterson was not authorized to incur additional charges on her behalf.

In June 2000 Ek informed Peterson that he was in breach of their contract and that she planned to sell the vessel if he did not begin his trip to Seattle by August 31, 2000. According to Ek, Peterson did not respond to this letter. Because she had not heard from Peterson for some time, Ek then contacted the Coast Guard to ask for a status check on the *O'Hana Kai*. The Juneau police left a message on the vessel asking Peterson to contact Ek, after which Peterson began communicating with Ek regularly via e-mail. On August 28, 2000 Ek sent Peterson an e-mail informing him that he had been in breach of contract for some time and that he was not authorized to move the vessel anywhere until it was insured.

Ek traveled to Juneau on September 4, 2000 to locate and regain possession of the *O'Hana Kai*. On September 5 she attempted to regain possession of the vessel with the assistance of marine surveyor Jim Sepel.

Peterson refused to turn over possession. Ek instructed Peterson not to move the vessel. Peterson refused to agree to not move the vessel, but told Ek that he would not take the vessel outside of Juneau. Peterson filed a labor lien in the amount of $22,418 against the vessel that same day.

Peterson then took the vessel to Petersburg, where it was moored from September 8 to September 15, 2000. He registered the vessel under a false name and left without paying for moorage. In e-mails exchanged between Peterson and Ek during this period, Peterson maintained that all he wanted to do was to remove his possessions from the vessel, but he did not take advantage of Ek's repeated attempts to make arrangements for him to move his things off the vessel and into a storage facility. Peterson left Petersburg and traveled to Taku Harbor, where the vessel was seized by police pursuant to court order.

After the vessel's seizure there was a great deal of disagreement between the parties as to what property on the boat belonged to Peterson and how he would obtain the property. On September 25, 2000 Ek arranged for a moving company to remove Peterson's personal property from the vessel and deliver it to him. Peterson claimed that Ek had not returned much of his property. In April 2001, before trial, Peterson and Ek entered into a settlement whereby Ek agreed to give Peterson any personal property that remained on the *O'Hana Kai* (except for any property considered to be a part of the vessel or its equipment, including an anchor, line, and chain) in exchange for an agreement by Peterson to limit any potential suit against Ek to a contract or *quantum meruit* claim only for the amount of his lien, and to raise no other claims. In March 2001 Greg Dockery filed a lien against the vessel, alleging that Ek owed him $4,000 for his labor and $1,200 for an anchor, line, and chain that he had loaned to Peterson.

### B. Proceedings

Ek brought suit against Peterson in September 2000. Before trial, Ek successfully moved to compel Peterson to disclose contact

information for numerous people whom Ek believed might have information material to the case, including Peterson's father. Trial was held on September 5–7 and 11–13, 2001 before Superior Court Judge Patricia A. Collins.

The superior court found that the parties had formed a contract in which Peterson, as an independent contractor, would repair the vessel and prepare it for resale. Judge Collins found that Peterson breached the contract in numerous ways, including failing to pay for moorage, failing to complete repairs necessary to transport the vessel from Juneau to Seattle, incurring debts against Ek and the vessel without authorization, and refusing to turn over the vessel to Ek following his breach of contract and upon written demand. Judge Collins found that Peterson hired others to do work on the vessel and either failed to pay them personally or told them that Ek would pay them, and ordered materials that he failed to pay for personally or improperly billed to Ek's credit card. Judge Collins also found that there had not been any waiver or modification of the contract because Ek's attempts to salvage the contract were aimed at mitigating losses, and that Peterson's continuing promises of performance justified Ek's delay in declaring breach and terminating her business relationship with Peterson.

Damages resulting from Peterson's breach of contract included Ek's cash advances to Peterson, moorage fees to the date of repossession, travel costs and fees necessary to repossess the vessel, costs for storage of Peterson's personal belongings, cell phone charges incurred by Peterson, and a rent advance to Peterson. Judge Collins rejected Ek's damage claims for the purchase price of the vessel, administrative costs surrounding the vessel's purchase, and costs associated with purchasing a court-ordered bond. Ek's claim's for negligent and intentional infliction of emotional distress were also denied.

Judge Collins also awarded Ek damages for trespass to the vessel.

Judge Collins found that there was no agreement between Peterson and Ek that he would be paid hourly for his labor, and that the receipts and invoices he submitted for reimbursement were a "mystery," "untrustworthy," and "suspect in numerous instances." Judge Collins also found, based on the language of Peterson's and Ek's settlement agreement, which provided that "Peterson retains a right to pursue his current lien against Ms. Ek for personal labor and materials ... under a breach of contract or quantum meruit legal theory," that the parties had agreed that Peterson could seek to recover under a theory of *quantum meruit*. After finding that Peterson was entitled to recover under *quantum meruit*, Judge Collins found that Peterson's labor and materials increased the value of the vessel by $3,000, but that the award should be offset against Ek's damages.

After subtracting Peterson's $3,000 *quantum meruit* award, Judge Collins awarded Ek $13,680.62 in net damages, $7,053.75 in attorney's fees, and $810 in costs pursuant to Alaska Civil Rules 68(b) and 79(f)(5). Peterson appeals.

## III. STANDARD OF REVIEW

 Interpretation of a contract is a question of law to which we apply our independent judgment.[3] We review a trial court's findings of fact under the clearly erroneous standard and will reverse the trial court's factual findings only when, "after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made."[4] A trial court's determination of damages is a question of fact which we will affirm unless clearly erroneous.[5]

 We review the record with the knowledge that it is the province of the trial court to judge witnesses' credibility and weigh conflicting evidence.[6] We review a

---

**3.** *Jackson v. Barbero,* 776 P.2d 786, 788 (Alaska 1989).

**4.** *Demoski v. New,* 737 P.2d 780, 784 (Alaska 1987).

**5.** *Beaux v. Jacob,* 30 P.3d 90, 97 (Alaska 2001).

**6.** *Maloney v. Maloney,* 969 P.2d 1148, 1150 (Alaska 1998).

trial court's discovery rulings for abuse of discretion.[7] The determination of which rule applies to a party's motion for attorney's fees is a question of law to which we apply our independent judgment.[8]

## IV. DISCUSSION

■■■ Peterson raises numerous points of error on appeal. He argues that the superior court erred by failing to credit him for his labor and for materials that he allegedly purchased for the vessel; requiring him to pay for moorage costs, cell phone bills, repossession costs, and independent contractors who worked on the vessel; failing to address his claim that Ek misappropriated an anchor; ordering him to disclose his father's phone number and address; basing its decision on his "bizarre" behavior; requiring him to pay damages for trespass to the vessel; making factual findings that there were no noticeable improvements to the vessel; and awarding attorney's fees to Ek.[9] Ek argues that Peterson is not entitled to recovery under a theory of *quantum meruit*, that the trial court inad-

vertently neglected to award her damages for Peterson's unauthorized use of her credit card, and that the trial court erred in awarding her only $260 in damages for trespass to the vessel.

### A. The Trial Court Did Not Err in Failing To Compensate Peterson for the Value of His Labor and for Materials Purchased for the Vessel.

■■■ Peterson argues that the trial court erred by failing to compensate him for his labor or for materials that he allegedly purchased for the vessel.[10]

■■■ We interpret the contractual language in accordance with Washington law due to the contract's choice of law clause.[11] Washington courts reject the "plain meaning" rule of contractual interpretation and interpret the terms of a contract in light of conduct, subsequent acts of the parties, and circumstances surrounding contract forma-

---

7. *Fletcher v. South Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003).

8. *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003).

9. Ek argues that Peterson waived all of his claims on appeal because he failed to cite legal authority for any of his arguments and relied on personal knowledge of the trial rather than the record. We judge a *pro se* litigant's performance by a less demanding standard. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987). But even when a *pro se* litigant is involved, an argument is considered waived when the party "cites no authority and fails to provide a legal theory" for his or her argument. *See A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) (*pro se* appellant waived claims due to cursory briefing that did not cite to legal authority); *Gates v. City of Tenakee Springs*, 822 P.2d 455, 460 (Alaska 1991) (*pro se* appellant waived claims on appeal when claims briefed "cursorily or not addressed at all"). Although Peterson often failed to cite legal authority to support his arguments, his briefing was such that we could discern his legal arguments and Ek could reply to them. We therefore find that Peterson's briefing of his case was adequate and that he has not waived his claims on appeal.

10. Peterson also claims that his friend, Greg Dockery, loaned him an anchor, line, and chain so that he could make the trip to Seattle. According to Peterson he paid Dockery for the anchor, rope and chain and Ek sold the vessel with the

anchor, rope, and chain still on it. Even if Ek did misappropriate these items, Peterson does not have standing to assert the claim of a third party. Standing in this court is a rule of judicial self-restraint that asks whether the person raising a particular claim is a " 'proper party to request an adjudication of a particular issue.' " *Moore v. State*, 553 P.2d 8, 23 n. 25 (Alaska 1976) (quoting *Flast v. Cohen*, 392 U.S. 83, 100–01, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)). We cannot consider the purported transfer of the materials lien from Dockery to Peterson because it was not in the record before the superior court and was improperly included in Peterson's excerpt of record. Alaska R.App. P. 210. *See also B.B. v. D.D.*, 18 P.3d 1210, 1214 (Alaska 2001) (holding that "we cannot properly receive and consider evidence that was not presented to and considered by the trial court"). Furthermore, any payment that Peterson did make for the anchor, line, and chain would have been considered materials for which he could not be reimbursed because Ek did not recoup her own financial investment.

11. A choice of law clause in a contract will generally be given effect unless (1) the chosen state has no substantial relationship with the transaction or there is no other reasonable basis for the parties' choice, or (2) the application of the law of the chosen state would be contrary to a fundamental public policy of a state that has a materially greater interest in the issue and would otherwise provide the governing law. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971).

tion, as well as the literal meaning of the language itself.[12]

The contract reads in pertinent part:

At his own cost and expense, and utilizing his own labor, Russell Peterson shall completely refurbish the Boat and complete efforts to renovate the Boat, converting it to a pleasure boat with the goal of maximizing resale value. Mr. Peterson agrees not to ask Ms. Ek to contribute or advance any of her financial resources to the effort, and further agrees that said renovation shall be completed no later that June 15, 2001.

 The only argument set forth by Peterson for reimbursing his labor is his personal belief that he has been treated unfairly and that his labor was devalued by the superior court. There is nothing in the circumstances surrounding the formation or performance of the contract, nor in the language of the contract itself, to suggest that either party intended that Peterson be paid as an hourly employee. The parties clearly contemplated that Peterson would be compensated, not with an hourly wage, but instead by being allowed to live on the vessel rent free and by sharing in half of the potential profit from the vessel's sale.

Peterson was entitled to be reimbursed for expenses related to the renovation of the vessel once Ek had fully recouped her own financial investment. But Ek did not fully recoup her own investment. Moreover, the contract provided that Peterson was to be reimbursed only for those costs related to the vessel's renovation that he could verify by receipt. Judge Collins found that Peterson's receipts were completely lacking in credibility, a determination that is supported by the record and to which we defer.[13] Each of these reasons fully supports denying Peterson's claim for expense reimbursement.

In sum, our independent review of the contractual language supports the trial court's denial of Peterson's claims for reim-bursement for labor and its finding that Peterson's documentation of alleged expenses was not credible. For these reasons, the trial court did not err in failing to award Peterson for labor or materials.

## B. The Trial Court Did Not Err in Its Award of Contractual Damages.

 Under Washington law, "the injured party is entitled to recovery of all damages naturally accruing from the [contractual] breach, and to be put in as a good a position as he would have been in had the contract been performed."[14] Parties in breach of contract are liable for foreseeable damages or for damages resulting from special circumstances of which the breaching party had reason to know.[15]

### 1. The trial court did not err in awarding Ek costs associated with repossessing the vessel.

 Judge Collins awarded Ek $3,829.38 for the costs of repossessing the vessel and travel expenses associated with the repossession. Peterson argues that this award was in error because he would have given up the vessel voluntarily if Ek had allowed him to remove his personal property from the vessel.

Peterson's argument is not supported by the record. When Ek traveled to Juneau she located Peterson on the vessel, but he refused to turn over possession of the vessel. In violation of Ek's express instructions not to move the vessel, Peterson took the vessel to Petersburg, where he registered it under a false name. He then traveled to Taku Harbor, where he remained until the vessel was located and seized by police. There is also evidence in the record that Ek made numerous attempts to allow Peterson to pack up his personal items and transfer possession of the vessel without resorting to repossession, including loaning Peterson money for a

---

12. *Berg v. Hudesman,* 115 Wash.2d 657, 801 P.2d 222, 229 (1990).

13. *Alaska Foods, Inc. v. American Mfrs. Mut. Ins. Co.,* 482 P.2d 842, 845–48 (Alaska 1971).

14. *Northwest Land & Inv. Inc. v. New West Fed. Sav. & Loan Ass'n,* 57 Wash.App. 32, 786 P.2d 324, 329–30 (1990).

15. *Wilkins v. Grays Harbor Cmty. Hosp.,* 71 Wash.2d 178, 427 P.2d 716, 721 (1976).

storage space. Because repossession of the vessel was a foreseeable result of Peterson's material breach of the contract and his failure to surrender possession, it was appropriate for the trial court to award Ek for costs associated with repossessing the vessel.

### 2. The trial court did not err in awarding Ek moorage costs up to the date of repossession.

Judge Collins awarded Ek $3,784.95 for moorage fees up to the date that the vessel was repossessed. Peterson argues that this was error because Ek paid for private moorage, rather than opting for public moorage, which would have been cheaper. Although injured parties do have a duty to make reasonable efforts to mitigate their damages,[16] it was not unreasonable for Ek to moor the boat at Trucano Construction rather than at a public mooring space. In fact, during the time that the vessel was in his possession, Peterson also moored the vessel at Trucano Construction.[17] The trial court did not err in awarding Ek private moorage costs incurred until the date of repossession.

### 3. The trial court did not err in awarding Ek damages for unauthorized cell phone usage.

The trial court found that Peterson ran up very high bills on the cell phone Ek loaned to Peterson, and required Peterson to pay Ek $1,211.31 in damages. Peterson argues that this was error because Ek gave him permission to use her phone and nearly all of the calls were to her. Because the charges were excessive and because the phone would have been returned months earlier had Peterson not breached the contract, the trial court did not err in awarding Ek for damages resulting from Peterson's excessive cell phone usage.

### C. The Trial Court Did Not Err in Determining that Peterson Was Responsible To Pay Individuals Whom He Hired To Work on the Vessel.

Peterson argues that the trial court erred by holding him financially responsible to contractors who worked on Ek's vessel. Peterson claims that a "Permission of Use" signed by Ek gave him the authority to hire workers who Ek would be liable for paying. The "Permission of Use," which was revoked by Ek on September 3, 2000, stated that Peterson's permission of use "shall include but not be limited to repairs, maintenance, navigation, seaworthiness, storage, berthing, and safe travel through national and international waterways without restriction through Canada and its borders." At trial, Peterson's testimony implied that the "Permission of Use" gave him permission to hire workers without consulting Ek and that Ek would be liable for paying the workers. Ek testified that the "Permission of Use" was intended only to give Peterson authority to take necessary actions concerning the vessel while traveling through Canada. Judge Collins found that Ek's testimony was "far more credible" than Peterson's and that "[n]o credible testimony was introduced that Ek agreed to pay [workers hired by Peterson] for [their] work." Because we defer to the trial court on issues of witness credibility,[18] and because Judge Collins found Ek's testimony regarding the "Permission of Use" to be more credible, we affirm the trial court's ruling that the "Permission of Use" did not authorize Peterson to hire workers to whom Ek would be financially liable.

### D. Judge Collins Was Not Personally Biased Against Peterson.

Peterson argues that Judge Collins was biased against him, that this bias prejudiced her decision, and that with the benefit of hindsight he would have preferred a jury trial. To support his claim of bias, Peterson

---

16. *Westland Const. Co. v. Chris Berg, Inc.*, 35 Wash.2d 824, 215 P.2d 683, 691 (1950).

17. Peterson also argues that the contract was modified to make Ek responsible for moorage, among other things, a claim the superior court found to be not credible.

18. *Harrower v. Harrower*, 71 P.3d 854, 861 (Alaska 2003) (quoting *Davila v. Davila*, 876 P.2d 1089, 1092 (Alaska 1994)) (holding that it is function of trial court "to judge witnesses' credibility and to weigh conflicting evidence").

points to Judge Collins's comments that Peterson's behavior was "childish, inappropriate, thoughtless and, at times, mean-spirited and obnoxious," which she made when ruling on Ek's claims for negligent and intentional infliction of emotional distress.

It cannot be said that a judge has a personal bias against a party simply because she forms an opinion of the case before her based on the evidence she hears at trial.[19] In order to prove a claim of judicial bias, Peterson must show that Judge Collins formed an opinion of him from extrajudicial sources.[20] In this case, Judge Collins had to consider and evaluate Peterson's conduct in order to determine whether Ek had made out a prima facie case for negligent or intentional infliction of emotional distress.[21] Judge Collins's comments were supported by the record and do not imply judicial bias.

### E. It Was Not an Abuse of Discretion for the Trial Court To Compel Peterson To Release His Father's Contact Information.

 Judge Collins ordered Peterson to release his father's address and telephone number to Ek. Peterson argues that this was an abuse of discretion.

Under Alaska Civil Rule 26 "[p]arties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action."[22] It is not necessary that the information actually be admissible at trial, only that the information sought might reasonably lead to the discovery of admissible evidence.[23] This court reviews discovery rulings for abuse of discretion[24] and will find error only when "left with a definite and firm conviction after reviewing the whole record that the trial court erred."[25] Ek stated that Peterson had discussed the contract with his father. The parties' understanding of the contract at the time of its execution was central to many of Peterson's claims at trial, and Peterson's father might have been able to provide Ek with relevant and admissible evidence. The trial court's order to compel Peterson to disclose his father's address was appropriate under Civil Rule 26 and was well within the court's discretion.

### F. Ek Has Waived Her Claims on Appeal by Not Filing a Cross-Appeal.

 In her brief, Ek argues that the trial court incorrectly awarded Peterson recovery in *quantum meruit*, that the trial court inadvertently forgot to credit Ek for damages resulting from Peterson's unauthorized use of her credit card, and that the trial court's award of damage for trespass to chattels was too low.

Alaska Appellate Rule 204(a)(2) provides that, once one party has filed a timely notice of appeal, any other party may file its notice of appeal within fourteen days or within thirty days of the clerk's date of distribution, whichever is longer. We have consistently held that failure to file a cross-appeal waives the right to contest rulings below.[26] Because Ek failed to file a cross-appeal, all three claims of error raised in her brief are waived.

19. *State v. City of Anchorage*, 513 P.2d 1104, 1113 (Alaska 1973), *overruled on other grounds by State v. Alex*, 646 P.2d 203 (Alaska 1982).

20. *See U.S. v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) ("The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.").

21. A claim of intentional infliction of emotional distress requires the court to form an opinion on the nature of the conduct at issue in order to determine whether a party has made a prima facie case. *Lybrand v. Trask*, 31 P.3d 801, 803 (Alaska 2001) (plaintiff must prove that defendant intentionally or recklessly engaged in conduct that was extreme or outrageous in order to

make prima facie case for intentional infliction of emotional distress).

22. Alaska R. Civ. P. 26(b)(1).

23. *In re Mendel*, 897 P.2d 68, 73 (Alaska 1995).

24. *Fletcher v. South Peninsula Hosp.*, 71 P.3d 833, 844 (Alaska 2003).

25. *Id.* (quoting *Christensen v. NCH Corp.*, 956 P.2d 468, 473 (Alaska 1998)).

26. *See, e.g., Municipality of Anchorage v. Gentile*, 922 P.2d 248, 265 n. 26 (Alaska 1996); *McQueary v. McQueary*, 902 P.2d 1326, 1327 n. 3 (Alaska 1995); *Cameron v. Hughes*, 825 P.2d 882, 885 n. 5 (Alaska 1992); *Jackson v. Nangle*, 677 P.2d 242, 247 n. 3 (Alaska 1984).

### G. The Trial Court Did Not Err in Awarding Ek Thirty Percent of Her Reasonable Attorney's Fees.

 The trial court awarded Ek $7,053.75 in attorney's fees pursuant to Alaska Civil Rule 68.[27] Civil Rule 68 applies in this case because Ek made an offer of settlement, that offer was not accepted, and Ek ultimately recovered an amount that was more than five percent less favorable to Peterson than the amount offered in settlement.[28]

Peterson argues that the trial court erred in granting attorney's fees to Ek because he was the prevailing party and that Ek should pay his attorney's fees for the specific issues on which he prevailed. Civil Rule 68(c) mandates that an offeror who receives costs and fees be considered the prevailing party for the purposes of an award of attorney's fees; therefore, Ek must be considered the prevailing party for the purposes of Civil Rule 82.[29] Peterson's claim that he is the prevailing party under Rule 82 is without merit.

Peterson also claims that the amount of the award was unjustified. Because Rule 68 mandates that Ek be granted thirty percent of her reasonable actual attorney's fees incurred after the date of her offer of judgment, there was no abuse of discretion.

The award of attorney's fees is affirmed.

### V. CONCLUSION

We AFFIRM the decision of the superior court in all respects.

**27.** Alaska Rule of Civil Procedure 68 provides in pertinent part:

> (a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim. . . .
> (b) If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney fees incurred by the offeror from the date the offer was made as follows:

. . . .

> (3) if the offer was served 90 days or less but more than 10 days before the trial began, the offeree shall pay 30 percent of the offeror's reasonable actual attorney fees.

**28.** Alaska R. Civ. P. 68(c). Ek served an offer of judgment on Peterson on August 24, 2001 offering to settle the case for $10,000. Peterson did not accept the offer and trial began eleven days later. Ek's recovery of over $13,680 in damages was "at least 5 percent less favorable to [Peterson] than the offer."

