NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREW McNAIR III, | ) | |
| | ) | Supreme Court No. S-14288 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-04601 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JOHNNA McNAIR, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1424 – June 27, 2012 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Andrew McNair III, pro se, Anchorage, Appellant. Maryann E. Foley, Law Office of Maryann E. Foley, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices, and Matthews, Senior Justice.**

## I.    INTRODUCTION

Andrew McNair proceeding pro se appeals the superior court's child support order and child custody determination awarding the children's mother, Johnna McNair, primary physical and sole legal custody. In a previous order, we set out the four

---

\*        Entered under Appellate Rule 214.

\*\*       Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

issues Andrew raises on appeal: "(1) the superior court did not follow child support guidelines; (2) the superior court erred in its award of child custody; (3) the superior court judge should have recused himself for bias against Andrew; and (4) the superior court violated Andrew's due process rights and his rights under the 'Serviceman's Relief Act.'" Andrew's opening brief, although wide-ranging, fails to focus on other specific claims of error. Thus, to the extent that he intended to raise additional issues, we are unable to identify or address them. We address the four issues earlier identified.

## II.    STANDARDS OF REVIEW

"The superior court has broad discretion in determining custody awards 'so long as the determination is in the child's best interests.' "[1] We will reverse a custody order if the superior court abused its discretion or its factual findings are clearly erroneous.[2] "[F]actual findings are clearly erroneous if, after a review of the entire record, we are left with the definite impression that a mistake has been made."[3] "[W]e give 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[4]

---

[1]    *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[2]    *Id.*

[3]    *Thomas v. Thomas*, 171 P.3d 98, 102 (Alaska 2007) (citing *Elton H. v. Naomi R.*, 119 P.3d 969, 973 (Alaska 2005)).

[4]    *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005)).

We review child support awards for abuse of discretion.[5] "We will find an abuse of discretion when our review of the record leaves us with a 'definite and firm conviction based on the record as a whole that a mistake has been made.' "[6]

## III. DISCUSSION

### A. The Superior Court Did Not Err In Awarding Johnna Custody.

Andrew argues the superior court erred by "removing custody without cause or reason." He alleges that the court failed to acknowledge crimes committed by Johnna. He accuses Johnna of leaving their children in a locked car, poisoning their daughter, and allowing their son to be mauled, and asserts that Johnna "doesn't know how to care for herself." Johnna argues the court's credibility findings should be given "particular deference" and that the superior court properly considered the AS 25.24.150(c) statutory factors. By recounting his version of the disputed facts, we take Andrew's argument to mean he contests the superior court's best interests findings of fact.

Under AS 25.24.150(c) the court is required to consider the following factors to determine the child's best interests:

> (1)  the physical, emotional, mental, religious, and social needs of the child;
>
> (2)  the capability and desire of each parent to meet these needs;
>
> (3)  the child's preference if the child is of sufficient age and capacity to form a preference;
>
> (4)  the love and affection existing between the child and each parent;

---

[5]  *Beaudoin v. Beaudoin*, 24 P.3d 523, 526 (Alaska 2001).

[6]  *Id.* (quoting *Kowalski v. Kowalski*, 806 P.2d 1368, 1370 (Alaska 1991)).

(5)     the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6)     the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;

(7)     any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8)     evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9)     other factors that the court considers pertinent.

Here, the court made factual findings for each of the AS 25.24.150(c) factors, and those findings are supported by the record. The court's finding that Andrew was unable to meet the children's emotional needs due to his high level of animosity towards Johnna is supported by Andrew's testimony that Johnna is a "sociopath," narcissistic, and that her "parenting skills are . . . almost non-existent." The child custody report indicated that Johnna provided the children a stable and healthy environment, as the court found. Andrew's testimony that the children should have only one hour a week with their mother and that Johnna is a "terrible parent" supports the court's finding that Andrew is unwilling to facilitate a relationship with Johnna. In contrast, Johnna sent Andrew information about the parties' daughter's health and sent him an audio clip of the children while Andrew was stationed abroad.

Andrew made similar accusations about Johnna at trial that he now raises on appeal. The court found that Andrew's testimony on custody showed that a "part of him . . . is out of touch with reality; he lives in a construct where [Johnna] is an evil mother. Some of [Andrew's] constructs are not backed up by the facts." This shows that the court considered Andrew's accusations, but did not find them credible. The court explicitly found that Andrew's claims about his son's injuries were "not borne out by the evidence."

Because ample evidence supports the court's findings, and because we defer to the court's credibility assessments, we hold the superior court's best interests factual findings are not clearly erroneous.

**B.      The Superior Court Erred In Its Child Support Determination.**

Andrew makes three arguments that the child support calculation was improperly calculated. First, he claims that the court failed to "acknowledge that [he] . . . paid for the insurance for the children for their entire lives and also wouldn't give me credit for it." Second, he argues that he directed his attorney to correct calculation mistakes but she failed to do so. Finally, he asserts that he "had the children more and cared for the children more" than Johnna. Johnna argues that Andrew "fails to explain what was incorrect about the calculation." She argues that Andrew's contentions regarding his attorney's alleged failures are "not properly before this court."

**1.      The superior court erred by failing to give Andrew credit for providing the children with health insurance.**

On July 6, 2009, Johnna's counsel filed a calculation of child support based on Andrew's paychecks and conceded that Andrew provided health insurance for the children. She argued "it is impossible from his [paychecks] to determine what cost covers [Andrew] and what portion is an additional expense for the children." On July 16 the superior court issued a support order that did not include a health insurance

adjustment. That day Andrew filed an opposition to Johnna's child support calculation arguing that Johnna's calculation failed to credit Andrew for paying for the children's insurance. Andrew's motion included a child support guidelines affidavit signed only by Andrew's counsel indicating that Andrew was paying $148.28 monthly for one child's health insurance, and $197.70 monthly for two children. Andrew also argued that the calculation should be based on shared custody because the reason he did not have evenings with the children was the medication he was taking for PTSD and he should not be penalized for a war-related injury. On July 20 Andrew filed a motion for reconsideration stating that it appeared the superior court did not see Andrew's objection before signing the child support order, requesting the court reconsider Andrew's pleading, and arguing that the order failed to "include health insurance offsets." The superior court denied the motion for reconsideration except on one issue not relevant to this appeal. The court concluded that "this is not a shared custody schedule, and [Johnna] properly calculated [Andrew's] gross income."

In January 2010 Andrew filed a motion to reduce child support based on his reduction in income due to his military deployment. Andrew submitted a child support guidelines affidavit signed only by his attorney indicating that his employer, the United States Army, would cover the children's health insurance at no expense to Andrew. In February 2010 the court granted Andrew's motion.

Alaska Civil Rule 90.3(d)(1) provides in relevant part:

> The court shall allocate equally the cost of [health] insurance between the parties unless the court orders otherwise for good cause. An obligor's child support obligation will be decreased by the amount of the obligee's portion of health insurance payments ordered by the court and actually paid by the obligor.

By failing to decrease Andrew's child support payment by the amount of Andrew's portion of health insurance payments, the court's July 6, 2009 order failed to comply with Civil Rule 90.3(d)(1). We remand for the superior court to recalculate Andrew's child support obligation in accordance with Rule 90.3(d)(1) for the period of time the July 16 order was in effect. Andrew should be afforded the opportunity to supply documentation of his insurance payments for that time period. If the amount and duration are verified and uncontested, the court may be able to issue an adjustment giving Andrew credit for overpayments without requiring a future evidentiary hearing.

### 2. Andrew's other child support arguments

Andrew's arguments concerning failures by his lawyer to submit information to the superior court do not concern alleged errors made by the superior court, and therefore are not properly before us on appeal.

We take Andrew's argument that he "had the children more" than Johnna to mean the court's support order was in error because it should have been based on shared custody. Civil Rule 90.3(f)(1) states that "[a] parent has shared physical custody . . . of children for purposes of this rule if the children reside with that parent for a period specified in writing in the custody order of at least 30, but no more than 70, percent of the year, regardless of the status of legal custody." At the time of the first support order, the order stated that Andrew had time with the parties' son for a total of 17 hours a week, and with the parties' daughter for nine hours a week. That does not amount to over 30 percent of the year and therefore does not fall under the Civil Rule 90.3(f)(1) definition of shared custody. We therefore hold that the superior court did not err when it concluded "this is not a shared custody schedule" and denied Andrew's motion for reconsideration.

**C.** **Andrew Failed To Establish That Judge Tan Was Personally Biased Against Him.**

Andrew claims that Superior Court Judge Sen K. Tan was biased against him. Johnna counters that the superior court's custody decisions were properly based on testimony, the custody investigator's report, observations of the witnesses' demeanor, and financial data submitted by the parties. We agree with Johnna.

"To prove a claim of judicial bias, the claimant must show that the judge formed an opinion of her from extrajudicial sources, resulting in an opinion other than on the merits."[7] "Merely making decisions that a plaintiff considers unfavorable is not bias . . . ."[8] In *Williams v. Williams* a party accused the superior court judge of failing to look out for the child's best interests, and we rejected that argument because the record supported the court's rulings.[9] We explained that "[f]orming an opinion from available evidence does not constitute personal bias."[10] As in *Williams*, Judge Tan's ruling is well supported by the record. Because Andrew fails to meet his burden of establishing that Judge Tan formed his opinion based on anything other than the evidence, we reject Andrew's bias claim.

**D.** **The Superior Court Did Not Violate The Servicemembers Civil Relief Act Or Andrew's Rights To Due Process.**

Andrew's opening brief mentions the Servicemembers Civil Relief Act [11] (SCRA) and the words "due process" once:

---

[7]     *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) (citing *Peterson v. Ek*, 93 P.3d 458, 467 n.20 (Alaska 2004)).

[8]     *Id.*

[9]     *Id.*

[10]     *Id.* (citing *Peterson*, 93 P.3d at 467 n.20).

[11]     50 U.S.C. App. § 522(b) (2006).

[T]he Plaintiff had property removed without any due process while he was deployed and had asked for Serviceman's Relief Act to be employed and had no knowledge of the proceedings until several weeks later when the court knew I would not have time to respond[] to the hearing. This forced Judge Tan's decision without representation or any way to be able to represent or even respond to the hearing.

Andrew's allegations regarding the SCRA violations are not supported by the record. Andrew invoked his rights under the SCRA multiple times. The court scheduled the parties' divorce and custody trial for March 2010. Andrew moved for a stay of trial under the SCRA after the Army ordered he report back to military service. The superior court granted the motion.

Trial was rescheduled for January 2011. Andrew proceeding pro se filed a motion for stay in early December 2010, but the motion was signed by Andrew's sister. The court system sent Andrew a notice of deficient pleadings informing Andrew that under Civil Rule 81 pleadings must be signed by the party or by their attorney and that he must correct the deficiency within 20 days. Andrew did not do so. In late December 2010 Andrew filed a motion for reconsideration which mentioned the SCRA, but did not explain how it was applicable. Andrew returned from deployment in late December 2010. In January 2011 Andrew, represented by new counsel, filed a motion to continue trial pursuant to the SCRA, and the superior court granted the motion.

The superior court twice granted Andrew's motion for stay based on the SCRA. Andrew has not shown that the court violated his rights under the SCRA.

Andrew mentions that he was deprived of property without due process only in passing. "[C]ursory treatment of an issue is considered by this court to be waiver of that issue."[12] We hold that Andrew waived his due process argument.

---

[12] *Brandon v. Corrections Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001).

## IV. CONCLUSION

We REMAND to the superior court for consideration of the child support order in accordance with Civil Rule 90.3(d)(1) and AFFIRM on all other grounds.