*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DILLON K., | ) | |
| | ) | Supreme Court No. S-17385 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-00029 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | No. 1769 – May 27, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Jason A. Gazewood, Gazewood & Weiner, P.C., Fairbanks, for Appellant. Laura E. Wolff, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I.     INTRODUCTION

The Office of Children's Services (OCS) removed Jane K. from the custody of her father, Dillon K., in January 2016.[1] The superior court found Jane to be a child

---

\*     Entered under Alaska Appellate Rule 214.

[1]     Pseudonyms are used to protect the family's privacy.

in need of aid (CINA) under AS 47.10.011 for physical harm, neglect, and parental drug abuse, and terminated Dillon's parental rights for failure to remedy the conditions that placed Jane at risk within a reasonable time. Dillon's appellate brief primarily focuses on failure to remedy and only cursorily mentions the superior court's CINA findings. We hold that Dillon has inadequately briefed and therefore waived all issues other than failure to remedy; we also hold that because Dillon still had not completed key portions of his case plan more than two years after Jane's removal, the superior court's ruling on that issue was not clearly erroneous. We therefore affirm the superior court's order terminating Dillon's parental rights.

## II.    FACTS AND PROCEEDINGS

OCS initiated an emergency removal for Jane in January 2016 after discovering that she had been left in the care of Ada R., who previously had her own children removed due to her suspected drug use.[2] Both of Ada's children tested positive for exposure to methamphetamine, and a later hair follicle test confirmed Ada's drug use. Dillon and Ada were in a relationship at the time, and Jane related to the OCS workers that she saw Ada every day and sometimes stayed overnight at Ada's apartment with her father. Dillon knew of OCS's concerns regarding Ada because he was present when her children were removed in December 2015 and he had participated in a subsequent CINA hearing. A few days after her removal, Jane began vomiting and her foster parents brought her to the emergency room; a urine analysis (UA) for drug exposure was negative. OCS scheduled a hair follicle test that same week and the test later came back positive for methamphetamine exposure. OCS also requested a hair follicle test for Dillon shortly afterward, but he was initially unable to complete it due to issues with

---

[2]    Jane's biological mother was evading a warrant for her arrest at the time of Jane's removal and did not participate in most of the CINA proceedings. She eventually relinquished her parental rights voluntarily.

OCS's paperwork. OCS informed Dillon in March 2016 that the paperwork issues had all been straightened out, but he never submitted to a hair follicle test or UA.

After assuming custody, OCS denied initial placement of Jane with Dillon's parents due to various concerns with individuals living in the trailers on their property. Jane was temporarily placed with her paternal uncle near Anchorage, and she was later moved to live with her paternal aunt in Fairbanks as a more permanent solution because her aunt was open to adoption. Dillon participated in family visitation "as much as possible" throughout the proceedings, although Jane's relocation to Fairbanks made visitation more difficult.

OCS formulated several case plans with Dillon to facilitate reunification. The first case plan requirement was for Dillon to "engage in a hair follicle drug analysis . . . [when] he can commit once again to going." The case plan also required Dillon to undergo a substance abuse assessment and "follow all recommendations of this assessment." Although Dillon participated in assessments in both July 2016 and April 2017, he did not complete the recommended treatment program — Alcohol & Drug Information School — until February 2018. These assessments also recommended random UAs to ensure compliance with the treatment program. Dillon's case plan additionally tasked him with engaging in the full Fathers' Journeys program at Cook Inlet Tribal Council. Dillon completed the parenting portion of Fathers' Journeys in February 2017, but he still had three more topics left in the healthy relationships portion as of April 2018. Another case plan requirement was for Dillon to "engage in counseling . . . to deal with self esteem issues and other past trauma/grief." As of the termination proceeding, the individual counseling component was also incomplete.

OCS filed a petition to terminate Dillon's parental rights in August 2017. OCS acknowledged that Dillon had "made some progress" toward remedying the conditions that precipitated Jane's removal, but these efforts were "not substantial."

Termination proceedings were held over three days in February, June, and July 2018. In addition to the circumstances surrounding Jane's initial removal and her positive hair follicle test, the court heard testimony describing subsequent instances where drug paraphernalia were found in Dillon's trailer and hotel room, as well as two criminal theft charges that had been filed against Dillon since the beginning of his CINA case. Jane's OCS caseworker testified that Dillon had never submitted to a hair follicle test or UA and had not completed Fathers' Journeys or the individual counseling components of his case plans. Dillon admitted that he had not completed his case plan, but he denied having ever caused Jane to experience any trauma.

The superior court found by clear and convincing evidence that Jane was a child in need of aid under AS 47.10.011(6) (substantial physical harm), (9) (neglect), and (10) (parental substance abuse). The court's factual findings noted that Jane "suffered harm due to exposure to methamphetamine[]" and Dillon "remains a safety threat to her" because he "fail[ed] to accept responsibility for his part." The court found that Dillon "put little effort into remedying the conduct that brought [Jane] into custody as evidenced by" not submitting to a hair follicle test, by staying in locations where drug paraphernalia were found, and by having "two open criminal cases" at the time of the termination proceeding. Consequentially, the court determined that Dillon had failed to remedy the conditions that put Jane at risk within a reasonable time, that OCS's reunification efforts were reasonable, and that termination was in Jane's best interests.

III. **DISCUSSION**

Dillon appeals the court's termination decision, but the only issue he presents asks broadly "Whether The Trial Court Erred In Terminating [Dillon]'s Parental Rights." The argument section in Dillon's brief spans a mere three pages and is primarily devoted to his failure-to-remedy challenge. Dillon acknowledges that he never took a hair follicle test or completed his case plan's counseling requirements, but argues

that those "are not tasks that would have taken considerable time." Dillon thus contends that "the trial court's finding that [Dillon] would not finish those tasks within a reasonable period of time was erroneous." OCS counters that Dillon has only adequately briefed the failure-to-remedy issue and waived issues only "tangentially mentioned." OCS also points out that Dillon misstates the applicable standard,[3] as the superior court need only find "that he *has* failed to remedy [his issues] within a reasonable time." (Emphasis in original.) Dillon's reply brief contends that he did not waive the argument that the court erred in "finding[] that [Jane] continued being a Child In Need of Aid," and that both issues were "separately addressed" in the opening brief's conclusion section.

We agree with OCS that Dillon's briefing on all issues other than failure to remedy is inadequate. We have previously held arguments to be adequately briefed even if a party only makes "general challenges," assuming that provides "sufficient notice that all aspects of the court's ruling were at issue."[4] Even where "arguments are conflated in [the] opening brief," we have held briefing to be adequate as long as the underlying facts are addressed in such a way as to make it clear what arguments are being made.[5] Notwithstanding, "where a point is given only a cursory statement in the

---

[3]     *See* AS 47.10.088(a).

[4]     *Winschel v. Brown*, 171 P.3d 142, 151 n.40 (Alaska 2007).

[5]     *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268 (Alaska 2008) (concluding that failure-to-remedy challenge was not waived when the mother "did address her attempts to remedy the questionable conduct" and "her reply brief directly addressed her efforts"); *see also Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 913 n.17 (Alaska 2006) (holding that "argument in substance if not in form" in opening brief was "good enough to avoid waiver" even though the issue was not mentioned explicitly "until [the] reply brief"); *cf. Peterson v. Ek*, 93 P.3d 458, 464 n.9 (Alaska 2004) (noting that a self-represented litigant's briefing need only be enough that the court can "discern his legal
(continued...)

argument portion of a brief, the point will not be considered on appeal," nor can inadequate briefing be corrected "by arguing the issue in a reply brief."[6] Thus, issues addressed in a single sentence that "cite[s] a single case without explanation" are considered waived.[7] Although Dillon argues that "[t]erminating parental rights is a drastic measure" and cites a handful of cases as examples of when it *would* be appropriate, he provides no legal argument to suggest that the superior court's CINA findings were erroneous. Dillon tangentially argues in his conclusion section that the "court erred by finding that [Jane] was a Child In Need of Aid." Because this is only a "cursory statement" not even included within the argument section, we hold this issue to be waived due to inadequate briefing.

We now turn to Dillon's failure-to-remedy challenge as the only issue properly before us.[8] In prior cases we have noted that "completing a case plan does not guarantee a finding that a parent remedied [his] conduct."[9] In this case, however, Dillon concedes that he has yet to complete substantial portions of his case plan, even though at the time of the termination hearing more than two years had passed since Jane's

---

[5] (...continued)
arguments" and the other party can "reply to them," even if the litigant "often failed to cite legal authority to support his arguments").

[6] *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991).

[7] *Windel v. Carnahan*, 379 P.3d 971, 980 (Alaska 2016).

[8] We review the trial court's factual findings for clear error, only reversing if we are left "with a definite and firm conviction that a mistake has been made." *Steve H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 444 P.3d 109, 112 (Alaska 2019) (quoting *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013)).

[9] *Charles S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 442 P.3d 780, 792 (Alaska 2019).

removal. Dillon's position is further undercut by his own argument that the tasks he had not completed would "not require significant additional time to complete." Dillon provides no excuse for having failed to complete such tasks in the two years he was provided. Dillon also argues that he has substantially remedied any alleged harm to Jane because he "no longer associated with [Ada] at the time of trial." Even if true, that does nothing to dispel the court's legitimate concerns that Dillon "has not changed his behaviors in such a way as to place [Jane]'s interests first." The court found that Dillon "continued to make unhealthy choices and associated with individuals connected to the use of illegal drugs." Ample evidence exists to support the court's finding that Dillon "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place [Jane] in substantial risk so that returning [Jane] to [Dillon] would place [Jane] at substantial risk of physical or mental injury."[10]

## IV.   CONCLUSION

We AFFIRM the superior court's termination of Dillon's parental rights.

---

[10]    *See* AS 47.10.088(a)(2)(B). This evidence includes the drug paraphernalia that were found in Dillon's hotel room and his continued "fail[ure] to accept responsibility for his part in the harm caused to [Jane]." We need not address whether incomplete hair follicle tests due to OCS's paperwork errors or subsequent failure to reschedule can be "count[ed] as positive results," because it is undisputed that Dillon never submitted to a hair follicle test or UA despite being required by his case plan and substance abuse assessment.